Ross M. MADDEN, Regional Director of the Thirteenth Region of the National Labor Relations Board, for and on behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

LOCAL 134, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Respondent.

No. 60 C 1439.

United States District Court
N. D. Illinois, E. D.
Oct. 11, 1960.

George Squillacote, N. L. R. B., Chicago, Ill., for plaintiff.

Asher, Gubbins & Segall, Chicago, Ill., for defendant.

CAMPBELL, Chief Judge.

Ross M. Madden, Regional Director of the Thirteenth Region of the National Labor Relations Board (herein called the Board), has petitioned this Court for and on behalf of the Board, pursuant to Section 10(*l*) of the National Labor Relations Act, as amended (61 Stat. 149; 73 Stat. 544; 29 U.S.C.A. § 160(*l*); herein called the Act), for appropriate injunctive relief pending the final disposition of the matters involved herein pending before the Board on charges alleging that respondent has engaged in, and is engaging in, acts and conduct in violation of Section 8(b) (4) (i) and (ii), subparagraph (B), of the Act. A hearing on the petition and answer was held on October 3, 1960.

Plaintiff's exhibit 1, the first amended charge filed with the Board, provides as follows:

"The above-named labor organization, (Local 134) acting through its officers, agents and representatives caused, induced and/or encouraged individuals employed by persons engaged in commerce or in an industry affecting commerce to engage in a refusal to work on or about June 23, 1960, and at all times since at the A & P Supermarket on Sauk Trail, Richton Park, Illinois, for the purpose of forcing or causing the Great Atlantic and Pacific Tea Company and other persons to cease doing business with Consumers Aid, Inc. because Consumers Aid's employees are not members of Local 134, IBEW.

"The above-named labor organization, acting through its officers, agents and representatives, threatened, coerced and restrained G. A. Rafel & Co. and other persons engaged in commerce or in an industry affecting commerce, with an object of forcing or requiring persons to cease doing business with Consumers Aid, Inc."

The petition for injunction in part alleges:

"(f) Consumers Aid, through its department Columbia, has been under contract with the Great Atlantic and Pacific Tea Company (herein called A & P) for the installation of sound systems in stores under construction or to be constructed by A & P in the Chicago, Illinois and Gary, Indiana areas. Other contractors have been engaged in performing work at A & P, including Rafel Elec-

tric Company (herein called Rafel) and Austin Lighting Company (herein called Austin). The total value of the construction of the job at A & P at which the dispute herein arose is in excess of $400,000.

"(g) At all times material herein, respondent has been engaged in a labor dispute with Columbia.

"(h) At no time material herein, has respondent had any labor dispute with Rafel, Austin, A & P, or any other persons involved in this dispute.

"(i) In furtherance of its dispute with Columbia, respondent, since on or about June 23, 1960, has ordered, instructed, requested, and appealed to individuals employed by Rafel, Austin, and other persons to refuse to perform services for their employers, and has thereby threatened, coerced or restrained Rafel, Austin, and other persons. Further, respondent has threatened, restrained and coerced A & P, Rafel, Austin and other persons engaged in commerce or in an industry affecting commerce from doing business with Columbia or other persons.

"(j) As a result of respondent's acts and conduct as set forth in (i) above, individuals employed by Rafel, Austin, and by other persons have refused to perform services for their employers.

"(k) By the acts and conduct set forth in subparagraphs (i) and (j) above, respondent has engaged in, and has induced and encouraged individuals employed by Rafel, Austin, and by other persons engaged in commerce or in industries affecting commerce, to engage in, strikes or refusals in the course of their employment to use, manufacture, process, transport, or otherwise handle or work on goods, articles, materials, or commodities or to perform services, and has threatened, coerced and restrained Rafel, Austin, A & P and other persons engaged in commerce or in industries affecting commerce.

"(l) Objects of the acts and conduct of respondent set forth in subparagraphs (i), (j) and (k) above, were and are (1) to force or require A & P, and other persons, to cease using, handling, or otherwise dealing in the products of and to cease doing business with Columbia; and (2) to force or require Rafel, Austin, and other persons to cease doing business with A & P and other persons, in order to force A & P and other persons to cease doing business with Columbia.

"6. It may fairly be anticipated that, unless enjoined, respondent will continue or repeat the acts and conduct set forth in paragraph 5, subparagraphs (i), (j), (k), and (l) above, or similar or like acts and conduct in violation of Section 8(b) (4) (i) and (ii), subparagraph (B), of the Act. It is therefore essential, appropriate, just and proper, for the purpose of effectuating the policies of the Act, and in accordance with the provisions of Section 10(l) thereof, that, pending final disposition of the matters involved herein pending before the Board, respondent be enjoined and restrained from the commission of the acts and conduct above alleged, similar acts and conduct, or repetitions thereof."

At the hearing, the parties agreed that the particular job complained of, the A & P Supermarket in Richton Park, Illinois, was completed on or before August 15, 1960. The first amended charge against Local 134 was filed with the Board on August 15, 1960. The petition for injunction was filed September 13, 1960. The hearing on this charge before the Board is set for October 18, 1960.

Neither the first amended charge, nor the petition for injunction nor the statements of counsel for the Board allege or concern any other specific action on the part of Local No. 134.

Counsel for defendant after conference with and consent of defendant at the hearing October 3, 1960, assured the Court that none of the practices complained of in plaintiff's petition will occur particularly with reference to Consumers Aid Inc., and A & P or with any other parties pending final adjudication of this matter by the Board.

I thereupon entered an order which in part reads:

"* * * Court rules that since no alleged illegal practices exist at present or at time of filing of petition, there is nothing before the Court to be enjoined. Court requests and counsel for defendant on the record and after conference with and consent of defendant assures that none of the practices complained of in plaintiff's petition will occur particularly with reference to Consumers Aid Inc., and A & P or with any other parties pending final adjudication of this matter by the N.L.R.B. Upon such representation the Court finds no reasonable cause at this time and continues the matter generally to be reset by either party upon notice in the event of violation of defendant's assurances given to the Court or in the event of the failure of the N.L.R.B. to proceed promptly to a disposition of this cause."

The Congressional purpose and intent concerning the injunction procedure of Section 10(*l*) is clear:

"* * * Because of the nature of certain of these practices especially jurisdictional disputes and secondary boycotts and strikes for specifically defined objectives, the committee is convinced that additional procedures must be made available under the National Labor Relations Act in order adequately to protect the public welfare which is inextricably involved in labor disputes.

"Time is usually of the essence in these matters, and consequently the relatively slow procedure of Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives—the prompt elimination of the obstructions to the free flow of commerce and encouragement of the practice and procedure of free and private collective bargaining * * *." S.Rep. No. 105, 80th Cong., 1st Sess. p. 8.

■ The duty of the district judge under Section 10(*l*) has likewise been clearly delineated in N. L. R. B. v. United Brotherhood of Carpenters, etc., 7 Cir., 276 F.2d 694, at page 699:

"At the outset we emphasize the limited scope of our function on this appeal. Section 10(*l*) of the Act requires that the district judge, as a prerequisite for the issuance of a *temporary injunction, need only find that there is reasonable cause to believe that a violation of § 8(b) (4) (A) of the Act, as charged has been committed. * * * Resolution of the actual merits of the controversy is left for administrative determination by the Board, subject to subsequent review here in the event enforcement is sought.*" (Emphasis supplied.)

"* * * Clearly a district judge proceeding under § 10(*l*), as here, looks to the statutory yardstick of *'reasonable cause' required as the basis for the petition and he is certainly not deciding which party, petitioner or respondent, is ultimately to prevail, nor do we now. In this incipient stage the district court was asked to aid the Board by preserving the status quo until it could ascertain by hearings, whether it had statutory jurisdiction, and if unfair labor practices existed. * * *"*

■ It is however true that the district court judge is vested with a certain

amount of discretion within the area of the statutory yardstick. Hecht Company v. Bowles, 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754; United Brotherhood of Carpenters, etc., v. Sperry, 10 Cir., 170 F.2d 863, 869. And there is a definite policy on the part of the courts to restrict the scope of restraining orders to actual controversies before them. Communication Workers of America, etc., v. N. L. R. B., 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896; N. L. R. B. v. United Brotherhood of Carpenters, etc., supra, 276 F.2d at pages 699, 700.

In the cause before me, the Board prays for injunctive relief which extends in scope beyond the first amended charge and the allegations of the petition. The particular job at which the alleged unfair labor practices occurred was finished at approximately the same time the charge was filed with the Board and one month prior to the filing of the instant petition. The Board has made no allegations as to other particular unfair labor practices by Local 134 or to a continuing unfair labor practice and, in open Court could not specifically state that there were other such practices or that this was a continuing unfair labor practice except for a general allegation and statement of presumption.

Since the Board's hearing on this charge will be held on October 19, 1960, and since Local 134 has stipulated in open Court to refrain from any of the practices alleged in the petition until the Board's determination, I find no reasonable cause to now grant the injunctive relief prayed for. Alpert v. United Steelworkers of America, etc., D.C., 141 F.Supp. 447; N. L. R. B. v. Illinois Tool Works, 7 Cir., 119 F.2d 356; Styles v. Local 74, etc., D.C., 74 F.Supp. 499.

Accordingly, the petition for injunctive relief is now denied and the matter is continued generally to be reset by either party upon notice in the event of violation of defendant's assurances given to the Court or in the event of the failure of the Board to proceed promptly to a disposition of the cause.