Clarence A. METER, Regional Director of the Eighteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

MILK DRIVERS & DAIRY EMPLOYEES UNION LOCAL 546, affiliated with International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America

and

Summit Farms, Inc., a Minnesota Corporation, Respondents.

No. 3–72–Civ–82.

United States District Court,
D. Minnesota,
Third Division.

March 29, 1972.

Robert V. Johnson, Minneapolis, Minn., for N. L. R. B., for petitioner.

Peterson, Bell & Converse, Willard L. Converse, St. Paul, Minn., for respondent union.

Briggs & Morgan, M. J. Galvin, Jr., St. Paul, Minn., for respondent Summit Farms, Inc.

MEMORANDUM AND ORDER

DEVITT, Chief Judge.

This matter is before the court as a result of a petition filed by the Regional Director of the Eighteenth Region of the National Labor Relations Board. The petition, filed under Section 10($l$) of the National Labor Relations Act, 29 U.S.C. § 160, asks that the court issue a temporary injunction pending the final disposition of certain matters to be heard by the Board.

On December 8, 1971, a charge was filed with the Board alleging that respondents in this action are engaged in unfair labor practices within the meaning of Section 8(e) of the National Labor Relations Act.[1]

1. This section prohibits employers and labor organizations from entering into or maintaining any "hot cargo" contract. 29 U.S.C. § 158(e) provides, "It shall be an unfair labor practice for any labor organization and any employer to enter into any contract or agreement, express or implied, whereby such employer ceases or refrains or agrees to cease or refrain from handling, using, selling, transporting or

The complaint alleges that Article XIII of the collective bargaining agreement linking respondents provides that, "The Company also agrees that it will not make dock delivery of any of its products to peddlers . . . who do not have a written agreement with Local 546 governing the distribution of the Company's products and the wages, hours and working conditions of their employees, except any distributor who is presently serving customers within the geographical area as defined herein and has a signed collective bargaining agreement with an affiliated union."

The complaint further asserts that since the promulgation of the above agreement, the union has insisted that respondent company comply fully with this provision. In particular it is claimed that the union has insisted that the company not provide dock delivery of its products to independent distributors who are engaged in the distribution of milk within a certain geographical area. As a result of the position taken by the union, the company has discontinued dock delivery to the independent distributors.

The parties have stipulated to the jurisdictional facts and have presented evidence aimed at establishing the reasonableness of petitioner's belief that the charge against respondents is true and that the matters alleged in the charge constitute violations of Section 8(e) of the Act. In addition, the propriety of the court issuing injunctive relief in this matter was argued.

■ When a petition for temporary injunctive relief is filed under Section 10(l), it is not the duty of the court to determine if there has been a violation of the Act. The court's inquiry is initially directed toward determining whether the Regional Director has reasonable cause to believe the Act has been violated. Madden v. International Hod

Carriers' Bldg. & Common Laborers' Union of America, Local No. 41, AFL–CIO, 277 F.2d 688 (7th Cir. 1960), cert. denied, 364 U.S. 863, 81 S.Ct. 105, 5 L. Ed.2d 86 (1960); Kennedy for and on Behalf of N. L. R. B. v. Sheet Metal Workers Int. Ass'n Local 108, 289 F. Supp. 65 (C.D.Cal.1968). Here I feel that the Regional Director has reasonable cause to believe the act has been violated. Although the parties are in disagreement as to the scope of Section 8(e) and have argued the applicability of National Woodwork Mfgrs. Assn v. N. L. R. B., 386 U.S. 612, 87 S.Ct. 1250, 18 L.Ed.2d 357 (1967), respondent union has agreed that they have been able to find no authority holding contrary to the position petitioner has taken. Petitioner has met his burden of showing "reasonable cause." I, of course, express no opinion as to the ultimate merits of petitioner's arguments.

■ It is the position of petitioner that once he has demonstrated reasonable cause to believe that the charge against respondents is true and that the matters alleged in the charge constitute violations of the Act, the injunctive relief follows without any further showing. This is not the law. In order for the district court to grant temporary relief under Section 10(l) it is necessary that the court review the facts and circumstances peculiar to the case and find that equitable relief is just and proper. For an injunction to issue there must be more than a showing of reasonable cause to believe the Act has been violated. Injunctive relief is reserved, ". . . for a more serious and extraordinary set of circumstances where the unfair labor practice, unless contained, would have an adverse and deleterious effect on the rights of the aggrieved party which could not be remedied through the normal Board channels." Minnesota Min-

otherwise dealing in any of the products of any other employer, or to cease doing business with any other person, and any contract or agreement entered into heretofore or hereafter containing such an agreement shall be to such extent unenforceable and void. . . . "

ing and Manufacturing Co. v. Meter, 385 F.2d 265, 270 (8th Cir. 1967).[2]

Here petitioner has rested solely upon his showing of "reasonable cause." Under the rationale of *Minnesota Mining*, this showing is not sufficient to justify the granting of the injunctive relief he seeks. I am not able to conclude with reasonable probability that the remedial purpose of the Act would be frustrated unless the injunction issue.

Therefore it is ordered that the petition for injunctive relief pending final disposition of these matters by the National Labor Relations Board be, and hereby is, denied.

2. Although the injunction involved in *Minnesota Mining* was one sought under Section 10(j) of the Act, the rationale of that decision applies equally to the situation where, as here, the injunction is sought under Section 10(*l*). See 385 F. 2d at 269, n. 5.