Alex V. BARBOUR, Regional Director of the Thirteenth Region of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

GENERAL SERVICE EMPLOYEES UNION LOCAL NO. 73, affiliated with Service Employees International Union, AFL–CIO, Respondent.

No. 77 C 2286.

United States District Court,
N. D. Illinois, E. D.

May 5, 1978.

Alex V. Barbour, Regional Director, N. L. R. B., William G. Kocol, Margo R. Newman, Chicago, Ill., for petitioner.

Irving M. Friedman, Katz & Friedman, Chicago, Ill., for respondent.

MEMORANDUM OPINION

FLAUM, District Judge:

This cause is before the court on petitioner's motion for reconsideration of the

court's denial of its motion for a preliminary injunction. Petitioner brings the instant compliant to restrain an alleged unlawful secondary boycott pursuant to section 10(*l*) of the Labor Management Relations Act, 29 U.S.C. § 160(*l*). The complaint charges that the respondent union attempted to force a customer of the complainant, Andy Frain, Inc., [Frain], to cease doing business with Frain in order to force Frain to recognize the respondent as the bargaining representative for some of its employees.

After filing the petition and answer, the parties briefed the issue of whether injunctive relief was appropriate. In its brief, the petitioner notified this court that there was no need for a hearing, choosing to rely solely on the administrative record. The petitioner sought a broad injunction.[1] Respondent notified the court that since June, 1977 there had been no picketing and that there would be no more picketing at the sites in question. The court on February 28, 1978 denied the petition on the theory that entry of an injunction was not "just and proper" because there was no threat to the status quo. The court stated in that opinion that in the event of resumption of such picketing it would consider a renewed motion forthwith.

On March 10, the petitioner filed the instant motion for reconsideration. In support of its motion, petitioner contended that the court's opinion was clearly contrary to settled law and that the facts the court relied on in ruling were clearly erroneous, without support in the record. Additionally, the petitioner contended that the court's ruling frustrated the congressional purpose in enacting section 10(*l*). For the reasons stated *infra*, the court denies the instant motion.

As this court noted in its February 28 opinion, respondent stated to the court that there have been no threats to picket or actual picketing since June. This court held that even assuming the existence of a

violation of the subparagraphs involved there appeared to be no cause to enter an injunction in the absence of some present picketing or immediate threat of picketing. In so ruling, the court relied on *Squillacote v. Graphic Arts International Union*, 513 F.2d 1017 (7th Cir. 1975). The court read that case as holding that the granting of relief under section 10(*l*) is conditioned by an equitable determination that it is just and proper. Petitioner argues that such a ruling was clearly contrary to settled law. In support, petitioner points to language in *Squillacote* which states that if the court has reasonable cause to believe there has been a violation of the subparagraphs at issue, it "*must* grant whatever injunctive relief 'it deems just and proper.'" 513 F.2d at 1021 [emphasis added]. Petitioner further argues that the court's ruling frustrates the express purpose for the enactment of subsection 10(*l*). The court finds both of petitioner's contentions meritless and hence affirms the earlier ruling.

At the outset, the court notes that the Supreme Court has never considered the instant issue. *See Danielson v. Joint Board of Coat, Suit and Allied Garment Workers' Union*, 494 F.2d 1230, 1244 n.20 (2d Cir. 1974). The court must necessarily, therefore, turn to the language of *Squillacote*:

On a section 10(*l*) petition, the district court is not called upon to decide the merits of an 8(b)(4) charge. The Board does this. The district court guided by equitable principles determines instead whether the Board has reasonable cause to believe the defendant has violated section 8(b)(4) of the Act. If the court finds reasonable cause, it must grant whatever injunctive relief 'it deems just and proper.'

*Id.* at 1021. The statement suggests to the court that, if anything, the court must grant relief which it deems just and proper. Since the above quotation is arguably subject to two interpretations, the court must look to prior law to determine what factors the court must consider in granting relief.

---

1. A "broad" injunction restrains the union from similar conduct as to any other neutral employer. A "narrow" injunction prevents such conduct only against the instant complainant.

■ Contrary to petitioner's contention, the court enters a two-part inquiry: first, whether injunctive relief would be just and proper in terms of general equitable principles; second, whether the Regional Director has reasonable cause to believe that a violation has occurred. A finding of reasonable cause is in itself insufficient. *See Danielson v. United Seafood Workers,* 405 F.Supp. 396, 401 (S.D.N.Y.1975). "The first part of this test gives the court discretion to grant or deny a preliminary injunction as the situation demands, and 'does not mandate the preliminary injunction simply because the District Court concludes that the Regional Director has reasonable ground to believe that an unfair labor practice has occurred.'" [citation omitted]. *Accord, Eisenberg v. Hartz Mountain Corp.,* 519 F.2d 138 (3d Cir. 1975); *Dawidoff v. Minneapolis Building & Construction Trades Council,* 430 F.Supp. 318 (D.Minn. 1976); *Fuchs v. International Brotherhood of Teamsters,* 427 F.Supp. 742 (D.Conn. 1977); *Seeler v. International Union of Operating Engineers,* 368 F.Supp. 1391 (W.D. N.Y.1974); *Vincent v. Local Union No. 532,* 319 F.Supp. 1146 (W.D.N.Y.1970). A similar claim was raised in *Meter v. Milk Drivers & Dairy Employees,* 339 F.Supp. 1008, 1009 (D.Minn.1972) where the court denied petitioner's motion:

It is the position of petitioner that once he has demonstrated reasonable cause to believe that the charge against respondents is true and that the matters alleged in the charge constitute violations of the Act, the injunctive relief follows without any further showing. This is not the law. In order for the district court to grant temporary relief under Section 10(*l*) it is necessary that the court review the facts and circumstances peculiar to the case and find that equitable relief is just and proper. For an injunction to issue there must be more than a showing of reasonable cause to believe the Act has been violated.

Since the petitioner chose to rest merely on the fact that he had reasonable cause to believe the subparagraphs in question had been violated, the court denied petitioner's motion. "Here petitioner has rested solely upon his showing of 'reasonable cause.' . . . this showing is not sufficient to justify the granting of the injunctive relief he seeks." *Id.* at 1010.

■ In perhaps the most exhaustive discussion of the problem, the Court of Appeals for the Second Circuit in *Danielson v. Joint Board of Coat, Suit & Allied Garment Workers,* 494 F.2d 1230 (2d Cir. 1974) faced the issue in a case where the district court entered an injunction, although it entertained grave doubts about the likelihood of petitioner's success on the merits. Judge Friendly began his opinion with Mr. Justice Douglas' opinion in *Hecht Co. v. Bowles,* 321 U.S. 321, 64 S.Ct. 587, 88 L.Ed. 754 (1944) which considered the proper standard for entry of injunctions under section 205(a) of the Emergency Price Control Act of 1942, 56 Stat. 23:

A grant of *jurisdiction* to issue compliance orders hardly suggests an absolute duty to do so under any and all circumstances. We cannot but think that if Congress had intended to make such a drastic departure from the traditions of equity practice, an unequivocal statement of its purpose would have been made.

. . . . .

. . . The historic injunctive process was designed to deter, not to punish. The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims. We do not believe that such a major departure from that long tradition should be lightly implied.

*Id.* at 329–330, 64 S.Ct. at 591, 592.

Examining the statutory language of section 10(*l*), the legislative history and other relevant statutes, Judge Friendly concluded that such departure was not justified. The

court first examined the statutory wording and concluded that it did not require that the court follow the Regional Director even if doubtful of the enforceability of the ultimate order for permanent injunction. Second, the court observed that there was nothing in the legislative history to indicate the existence of an absolute duty to enter such injunctions. Rather, "it seems particularly unlikely that Congress would have wished the courts to act so freely in granting injunctions theretofore forbidden in Section 4 of the Norris-LaGuardia Act of 1932, 29 U.S.C. § 104." *Id.* at 1242. Third, the court analogized subparagraph 10(*l*) to subparagraph 10(j).[2] Numerous courts which have entered or denied 10(j) injunctions have held the district court must consider general equitable criteria.

*Danielson* is not factually apposite. In *Danielson*, there was doubt as to petitioner's ultimate success on the merits. The present case is distinguishable in that the court entertains doubts as to the necessity for such relief where there has been no showing of a likelihood of renewed picketing. However, the thrust of *Danielson* is applicable to this case: if the court *must* do anything at all, it *must* consider the necessity for entry of such relief. "Unless this district court is to serve as the 'rubber stamp' . . . some scrutiny of the Regional Director's conclusions is necessary." *Fuchs v. International Brotherhood of Teamsters*, 427 F.Supp. 742, 748 (D.Conn. 1977).

The law in the Seventh Circuit does not deviate from the general principles discussed above. In *Madden v. Local 134*, 187 F.Supp. 698 (N.D.Ill.1960), the court denied a motion to enter an injunction where it

was assured that the picketing would not resume.

It is however true that the district court judge is vested with a certain amount of discretion within the area of the statutory yardstick. [citing *Hecht Co. v. Bowles*]. And there is a definite policy on the part of the courts to restrict the scope of restraining orders to actual controversies before them. . . .

. . . . .

Since the Board's hearing on the charge will be held on October 19, 1960, and since Local 134 has stipulated in open Court to refrain from any of the practices alleged in the petition until the Board's determination, I find no reasonable cause to now grant the injunctive relief prayed for.

*Id.* at 702.

In a recent 10(j) case, *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735 (7th Cir. 1976), the court followed this view. In discussing the appropriate standard, the court noted:

It is difficult, if not impossible to articulate a universally applicable standard; nevertheless, it is clear to us that courts should consider such factors as the need for an injunction to prevent frustration of the basic remedial purpose of the act and the degree to which the public interest is affected by a continuing violation as well as more traditional equitable considerations such as the need to restore the status quo ante or preserve the status quo.

*Id.* at 744.

■ Petitioner contends that *Madden* is inapplicable to the facts of the present case. The reason, petitioner contends, is because

---

2. Petitioner argues that a different standard is applicable to 10(*l*) than subparagraph 10(j). Petitioner contends 10(j) is discretionary, and 10(*l*) is mandatory in its terms. This does not appear to be the law. Under subparagraph 10(*l*), the Regional Director *must* apply upon a showing of reasonable cause, but the court is not under a similar mandate.

   [T]he only distinction between § 10(j) and § 10(*l*)—apart from the fact that the latter can be invoked before issuance of a complaint—is that under § 10(*l*) the Regional Director must apply once he "has reasonable

cause to believe such charge is true and that a complaint should issue," whereas the Board's decision to apply under § 10(j) is left to its discretion. Nothing in the language of § 10(*l*) suggests any intention to prescribe a lesser role for the court than under § 10(j). *Danielson v. Joint Board of Coat, Suit & Allied Garment Workers*, 494 F.2d at 1242.

   "It has been held that standards under subsections (j) and (*l*) are the same." *Squillacote v. Local 248, Meat & Allied Food Workers*, 534 F.2d 735, 743 (7th Cir. 1976).

a broad injunction is sought in this case and in *Madden* the scope of the relief was more narrow. Even if the court were to ignore *Squillacote v. Local 248, Meat & Allied Food Workers*, there are two problems with this reasoning. First, assuming petitioner is correct that this distinction is critical, *Madden* must nevertheless stand for the proposition that the district court has a certain amount of discretion in determining whether an injunction should be entered. Second, in the court's view, there was no evidence in the record to support a finding that respondent had a "proclivity" to commit unfair labor practices. Petitioner stated to the court that no hearing was necessary. Rather, petitioner cited certain administrative hearings in which respondent was a party as "proof" of a proclivity to violate the Act.[3] In light of the minimal legal and factual burden petitioner must meet, the broad nature of the relief sought and the resultant incursion on the freedom of the union, this court must scrutinize something more than a group of administrative decisions in order to enter such relief.

Petitioner did not present evidence supporting the conclusion that a broad injunction was necessitated. The court therefore views the record at the time of the initial decision as being devoid of both a current threat of repeated violations of subparagraph 8(b)(4)(i), (ii)(B) by respondent as to the instant employer and any proof, which the Board accepts as legally relevant, of a "recividist propensity" to commit unfair labor practices. "[I]t [is] established that the injunction must be premised upon preventing some injury, either to the employer or the general public." *Fuchs v. International Brotherhood of Teamsters*, 427 F.Supp. 742, 748 (D.Conn.1977).

Petitioner argues that such a ruling frustrates the purpose of Congress in enacting the Taft-Hartley law. As this court reads the legislative history of the subparagraph in question, it was enacted to ensure the prompt elimination of the obstructions to the free flow of commerce, to encourage free private collective bargaining and to prevent persons from accomplishing their unlawful object before being placed under legal restraint. S.Rep.No.105, 80 Cong., 1st Sess. 8, 27. *See Humphrey v. Drivers, Chauffeurs & Helpers Local 639*, 369 F.Supp. 730, 739 (D.Md.1974). In the present case, there is no factual record to conclude that such a threat exists. Entry of an injunction would have no effect on commerce or private collective bargaining.

In order that the position of the court be clear, it should be emphasized that this court has, contrary to petitioner's suggestion, never held this case moot. Rather, it denied the injunction because there was no apparent risk of repetition. Petitioner attacks this ruling as being an impermissible post-hearing finding. The court does not view that conclusion as a finding. Rather, it views as part of petitioner's minimal proof that necessity for relief be demonstrated. As this court views the law, in the absence of some proof of threat, injunctive relief is inappropriate.[4]

Accordingly, petitioner's motion for reconsideration is denied.

It is so ordered.

The Board has held that such cases are not probative of the existence of a proclivity to violate the Act. See Teamsters Local No. 70 (C & T Trucking), 191 N.L.R.B. 11 (1971).

**3.** The regional director cited to the court four Administrative proceedings as the sole evidence to support a broad order. Two of the cases, R.R.S. Inc. Security, J.D. 795–74 and Management Safeguards, Inc., J.D. 431–77, were decisions of the Administrative law judge to which no exceptions were filed. In another case, Andy Frain, Inc., 230 N.L.R.B. No. 52 (1977), the parties entered an agreement which was arguably akin to a settlement. Finally in A–1 Security Service Co., 224 N.L.R.B. 434 (1976), *enforced*, No. 76–1708 (D.C.Cir. Feb. 22, 1978), the Board ruled there was no basis for finding a proclivity to violate the Act existed.

**4.** In the court's view, the record in the administrative hearing substantially supports the regional director's conclusion that true cause to believe a violation has occurred. The regional director's theory of law in the present case is "within the range of rationality" and may be sustained by the Board. *Squillacote v. Graphic Arts International Union*, 540 F.2d 853, 859 (7th Cir. 1976).