George SQUILLACOTE, Regional Director of the Thirtieth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner-Appellee,

v.

LOCAL 248, MEAT & ALLIED FOOD WORKERS, affiliated with Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, Respondent-Appellant.

George SQUILLACOTE, Regional Director of the Thirtieth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner-Appellee,

v.

LOCAL 248, MEAT & ALLIED FOOD WORKERS, affiliated with Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, et al., Respondents-Appellants.

Nos. 75–1377, 75–1378, 75–1563 and 75–1379.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 5, 1975.

Decided April 13, 1976.

Irving M. King, Robert H. Nichols, Chicago, Ill., for respondents-appellants.

Gerald Brissman, Associate Gen. Counsel, Joseph E. Mayer, Asst. Gen. Counsel, Michael Josserand, Atty., N.L.R.B., Washington, D. C., for petitioner-appellee.

Before RIVES, Senior Circuit Judge,[*] and SWYGERT and PELL, Circuit Judges.

PELL, Circuit Judge.

In issue in this appeal is the propriety of the district court's grant of injunctive relief under 29 U.S.C. § 160(j). Also in issue is the propriety of the district court's findings of civil contempt for violations of its temporary restraining order and injunction.

The present proceedings arose out of a labor dispute between the defendant union [1]

---

[*] Senior Circuit Judge Richard T. Rives of the United States Court of Appeals for the Fifth Circuit is sitting by designation.

1. The union is involved in all four consolidated appeals. The individual defendants are only involved in the contempt proceedings. As there is no conflict between the Union's interest and the individual's interest, the defendants are referred to collectively as "the Union" throughout this opinion.

and the Milwaukee Independent Meat Packers Association resulting in an economic strike by the Union. On January 28, 1975, the Association filed an amended unfair labor practice charge alleging that the Union was unlawfully restraining and coercing employees in the exercise of their rights guaranteed in 29 U.S.C. § 157 by threatening and committing violent acts. The Association alleged that these acts violated 29 U.S.C. § 158(b)(1)(A). Following an investigation of the charge, the Board's Regional Director concluded that there was reasonable cause to believe that the Union was engaging in unlawful activities. On February 7 he notified the Union by telephone of his intention to seek injunctive relief and on February 10 issued a complaint and filed a petition with the district court.

The petition alleged jurisdiction under section 160(j) and sought a temporary restraining order pending a hearing at a time set by the court for the Union to show cause why an injunction should not be entered. The petition alleged that there was reasonable cause to believe that the Union restrained and coerced employees of the Association in the exercise of their rights "by engaging in violence and threats of violence against nonstriking employees of the Association, supervisory personnel of the Association; blocking of ingress and egress at the premises of Association members; damaging the property of the Association, of nonstriking employees of the Association, and of supervisory personnel; following the vehicles of nonstriking employees and by other conduct . . . ." The petition then indicated when and where the various illegal acts took place but did not identify the participants by name. Sixty-four affidavits were filed to support the allegations in the petition. Finally, it was alleged that upon information and belief it might fairly be anticipated that the illegal acts would continue unless enjoined. The Board moved the court to consider the request for injunctive relief without oral argument or an evidentiary hearing after the Union had an opportunity to file an answer, affidavits, and memoranda.

Immediately upon filing the petition, counsel for the Board appeared before Judge Warren and orally requested the entry of a temporary restraining order. Counsel for the Union was present; but since the Union had not been served, the matter was continued until February 11 at 4:15 p. m. The Union was served at approximately 11:50 a. m. on February 11, although counsel for the Union had been given a courtesy copy of the documents the previous day.

At the hearing on February 11, the Union moved for the scheduling of an evidentiary hearing on the grounds that it was required by statute. This motion was denied, and the Union then moved to postpone the hearing until February 13 on the grounds that the Union had not been given reasonable notice so that it could properly defend. This motion was denied and so was a motion to strike the affidavits and exhibits filed by the Board. After hearing arguments of counsel, the court found that it had jurisdiction to enter a temporary restraining order, that there was "rather clear evidence of gross violations of human rights, to say nothing of the unfair and improper labor practices," that there was widespread violence which had not been controlled, that the violence was apparently continuing, and that there was imminent danger that additional, substantial, and irreparable injury would result if the Union were permitted to continue its actions pending a hearing on the petition. The judge indicated that he would enter an order but invited discussion on how long it should last before a hearing was held on the temporary injunction.

Counsel indicated that the Board could submit a brief within three days, but counsel for the Union indicated that he wished the opportunity for discovery before the hearing. Counsel for the Union also raised the problem of the ten-day time limit in Fed.R.Civ.P. 65 for temporary restraining orders. The court indicated that it did not believe it was bound by the ten-day time limit in Rule 65 because the proceedings were not ex parte but that the order would

indicate that the Union's request for discovery was a good cause for the extension.

Counsel for the Board renewed his motion that the injunction issue be determined on the basis of affidavits and memoranda rather than on an evidentiary hearing but indicated that the Board would be willing to stipulate to the admission of the transcript of the hearing to be held before an administrative law judge on the merits of the case. The court indicated that it would wait until after receiving the briefs to determine whether an evidentiary hearing would be held.

The court entered an order enjoining the Union, its officers, representatives, agents, servants, employees, and all members and persons acting in concert or participation with it from committing various specified acts and from "in any other manner restraining or coercing employees of the Association or other persons seeking to do business with the association in the exercise of their rights as guaranteed under Section 7 [29 U.S.C. § 157] of the Act." It also ordered the Union to provide specific instructions to its members and representatives to refrain from such acts. The order established a briefing schedule and was by its terms to run until February 28. The following day the order was reduced to writing by the court with minor changes in form. The mandatory portion of it is set forth in an appendix to this opinion. On February 24 the Union filed a notice of appeal regarding this order. This appeal is No. 75–1377.

A hearing was convened on February 28. Various documents had been filed including an answer to the petition, memoranda of law, and a renewed motion by the Union for an evidentiary hearing. At the hearing the Board moved to extend and broaden the temporary restraining order to limit the number of pickets. Counsel for each of the parties then stated their views at some length. The court denied the motion to expand the scope of the restraining order; scheduled a hearing on the preliminary injunction for March 7; determined that the hearing would be based on the transcript of the hearing before the administrative law judge, the briefs of the parties, and their arguments; and extended the original restraining order through March 14. On February 28 the Union filed a notice of appeal regarding this extension. This appeal is No. 75–1378.

On March 5 the Regional Director filed a petition for civil contempt against the Union; Edmund Bobrowicz, the Union's financial secretary-treasurer; Harding Bond, Union President; Larry Pultz, Mike Bobich, and Oscar Smith, picket captains; and all other persons acting in concert with the Union. The petition alleged that the persons involved had knowledge of the restraining order and that the order was in full force and effect. The petition charged the individuals with various acts restrained by the order and the Union with failing to give the members instructions as required by the order. The petition prayed for an order directing the parties to comply with the restraining order and for such other relief as the court deemed proper. At the beginning of the hearing on the restraining order, Board counsel suggested that the court order fines against the Union and the named individuals for each future violation. The Respondents sought a jury trial under 18 U.S.C. § 3692, but the Court denied this motion. An evidentiary hearing was held on the civil contempt issues which lasted four days. At the conclusion of the hearing on March 20 the court entered an order detailing findings of facts and conclusions of law. The court found that picket captains are picket line agents of the Union, that the named picket captains had received notice of the terms of the restraining order, and concluded that they were acting in contempt of the order. The court ordered them removed from the picket line for the remainder of the period the restraining order covered. The specific conduct the court found to violate the restraining order included: recording license plate numbers of nonstriking employees and job applicants; blocking the entrance and pounding with hands upon vehicles; threatening named persons by, e. g., telling them that a former job applicant no longer had any legs, and

that a driver of a semi crossing the line had his windows shot out; and threatening others by telling them, e. g., that they could be identified through their license plates, that they knew where they lived, and that they would be gotten that night. The court found that the named parties participated in some of these activities and failed to prevent others. The court found that the Union by failing to control and curtail the misconduct had ratified it. It therefore fined the Union $500.00, "such fine being a civil fine of a compensatory nature . . . ." The court ordered the Union to remove another picket captain who was not named in the contempt petition but who the court found had notice of the restraining order and engaged in misconduct. The court expressly made no finding of contempt against Edmund Bobrowicz or Harding Bond in their individual capacities. The Respondents filed a notice of appeal on the same day the order of contempt was entered. This is appeal No. 75–1379.

As indicated earlier, a hearing on the preliminary injunction was scheduled for March 7. This was continued by stipulation of the parties until March 10 and the efficacy of the outstanding order was extended from March 14 to March 17. The Union reserved its right to challenge the validity of the underlying order.

On March 10 a hearing was held at which the Board urged that a preliminary injunction be entered which was broader in scope than the restraining order. The Union opposed this and the matter was taken under advisement. In response to a motion by the Board, on March 17 the court entered an order extending the restraining order to continue through March 21. The court indicated that the intervening contempt hearing was good cause for the extension.

On March 21 the court entered a concise and well reasoned decision and order on the preliminary injunction.[2] The court indicated that the standard to determine whether to enter an injunction was whether reasonable cause existed to believe that the alleged unfair labor practices have been committed. The court indicated that the Board had come forth with evidence of violence, including property damage and personal injury, threats of violence to nonstriking employees and other persons attempting to cross the picket line, obstruction of ingress to and egress from the Association member plants, and other misconduct. According to the court, the Union did not deny the occurrence of the various acts of misconduct as alleged but rather argued that the misconduct was not attributable to it. The court found that although sufficient agency might not exist to charge the Union with each instance of misconduct which occurred away from the picket line, numerous instances occurred concerning which there was reasonable cause to believe the Union was responsible. The court indicated that injunctive relief was appropriate because a reasonable apprehension existed that the Board's ultimate order might be a nullity if the status quo were not maintained. The status quo in this case would be the existence of a peaceful strike. The court found that it had every reason to believe that without an injunction, the strike misconduct would resume. It entered a preliminary injunction substantially similar to the temporary restraining order;[3] but because it found that there would be no need for further relief if the Union complied with this order, it denied the Board's request to broaden the injunction by limiting the number of pickets at each site, by requiring the Union to relinquish all lists of names and addresses of nonstriking employees, and by prohibiting picket captains Pultz, Bobich, and Smith from all picket line activity for the duration of the strike.

2. The court order is published at 390 F.Supp. 1180.

3. The temporary restraining order prohibited threatening members of the general public or damaging their property; the preliminary injunction did not. The preliminary injunction prohibited writing on the picket line in any fashion which suggested the recordation of license numbers; the temporary restraining order only prohibited the actual recording of license numbers.

On May 23 the Union moved the court to dissolve the preliminary injunction. The court denied the motion, and the Union filed a notice of appeal the same day. This is appeal No. 75–1563.

## I. Validity of Temporary Restraining Order

### A. *Power to Grant Temporary Restraining Orders*

29 U.S.C. § 157 grants employees the right to engage in collective bargaining or to refrain from doing so. Section 158(b)(1)(A) grants the Board power to proceed against union tactics involving violence, intimidation, and threats which tend to coerce employees in the exercise of their rights under section 157. *N.L.R.B. v. Driver's Local 639,* 362 U.S. 274, 290, 80 S.Ct. 706, 715, 4 L.Ed.2d 710, 721 (1960). Section 160(j), added to the National Labor Relations Act by the Taft-Hartley amendments in 1947, grants federal district courts jurisdiction to grant "such temporary relief or restraining order as it deems just and proper" at the behest of the Board pending adjudication of an outstanding complaint pending before it.[4] Whether to seek an injunction under section 160(j) is discretionary with the Board. Section 160(h) provides that the jurisdiction of a court granting temporary relief or restraining orders under section 160 is not affected by sections 101 through 115 of the Title 29, the Norris-LaGuardia Act.

The Norris-LaGuardia Act broadly prohibited federal courts from exercising jurisdiction in labor disputes, though we note that restraint of violence is excepted from its operation. 29 U.S.C. § 107; *cf.* 29 U.S.C. § 104. Initially in this appeal the Union argued that the procedural limitations of the Norris-LaGuardia Act applied to district courts' actions under section 160(j). In light of the Supreme Court's decision in *Muniz v. Hoffman,* 422 U.S. 454, 95 S.Ct. 2178, 45 L.Ed. 319 (1975), which held that section 160(h) makes all provisions of the Norris-LaGuardia Act inapplicable to section 160 proceedings, it has now properly abandoned this position.

Section 160(*l*) is similar to section 160(j) in that it grants district courts jurisdiction to provide relief from certain unfair labor practices. Its primary thrust is directed against secondary boycotts. It differs from section 160(j) in that it does not make the decision to seek relief discretionary with the Board but rather mandates action whenever after investigation a regional attorney has reasonable cause to believe that a charge within the scope of the subsection is true. The district court does not need to wait to act until a complaint has been filed before the Board but may upon petition grant "such injunctive relief or temporary restraining order as it deems just and proper." The subsection only permits temporary restraining orders to be issued without notice in cases where the petition alleges that substantial and irreparable injury will be unavoidable and limits such orders to five days duration.

Sections 160(j) and 160(*l*) were both enacted in 1947. In *Muniz v. Hoffman, supra,* the Supreme Court had occasion to quote from the Senate Report indicating the purpose of the sections:

"Time is usually of the essence in these matters, and consequently the relatively slow procedure of Board hearing and order, followed many months later by an enforcing decree of the circuit court of appeals, falls short of achieving the desired objectives—the prompt elimination of the obstructions to the free flow of

---

4. U.S.C. § 160(j):

The Board shall have power, upon issuance of a complaint as provided in subsection (b) of this section charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court, within any district wherein the unfair labor practice in question is alleged to have occurred or wherein such person re- sides or transacts business, for appropriate temporary relief or restraining order. Upon the filing of any such petition the court shall cause notice thereof to be served upon such person, and thereupon shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

commerce and encouragement of the practice and procedure of free and private collective bargaining. Hence we have provided that *the Board, acting in the public interest and not in vindication of purely private rights,* may seek injunctive relief in the case of all types of unfair labor practices and that it shall also seek such relief in the case of strikes and boycotts defined as unfair labor practices." S.Rep.No.105, 80th Cong., 1st Sess., 8 (1947) (Emphasis added.) 422 U.S. at 466–67, 95 S.Ct. at 2185, 45 L.Ed.2d at 329.

The Union argues that the district court had no power under section 160(j) to enter a temporary restraining order and that as the prerequisites of a preliminary injunction [5] were not met, the order entered by the district court was completely void.

The language of section 160(j), authorizing "temporary relief or [a] restraining order," would appear broad enough to authorize a court to enter a temporary restraining order. The Union argues that it does not because the language of subsection (*l*) is more specific regarding temporary restraining orders. This language difference between subsection (j) and subsection (*l*) is insufficient for us to conclude that Congress intended to restrict judicial relief more narrowly than the words would imply. Subsection (*l*) empowers the district courts to act in a controversial field. The Norris-LaGuardia Act was prompted by what Congress viewed as an abuse of power by the courts in enjoining strikes. Subsection (*l*) authorizes injunctions against certain types of strikes. While it mandates action in certain cases, it also puts precise limitations on the scope of that action. The differences in language may well have resulted from Congressional effort when drafting subsection (*l*) to draw carefully its authorization in the face of competing policy objectives, while in subsection (j) it merely

adopted the language which then existed in subsections (e), (f), and (h).

The Union argues that the notice requirement of section 160(j) indicates that Congress did not intend to allow temporary restraining orders under that section. It relies on *Sims v. Greene,* 161 F.2d 87 (3d Cir. 1947), which held that the notice requirement of Fed.R.Civ.P. 65(a) implied the right to be heard, and the right to be heard implied an opportunity to present evidence. It also relies on *Marshall Durbin Farms, Inc. v. National Farmers Organization, Inc.,* 446 F.2d 353 (5th Cir. 1971), a Sherman Act case which applied similar logic to find that the right to present evidence implied the right to a reasonable opportunity to prepare. The Union argues that the notice requirement of section 160(j) should be interpreted the same way and that a district court may not enter any restraining order until such a hearing has been held. It states in its brief:

> There is nothing, however, which indicates that Congress felt there would be cases in which the granting of interim relief could not await the few days required to extend to respondent reasonable notice and an adequate opportunity to prepare, or which required that respondent be denied a fair opportunity to be heard in opposition. (Footnote omitted.)

We cannot conceive that Congress would not have intended the district court to grant temporary relief pending a hearing once the Board made a preliminary showing of violations and the need for immediate relief. In *Granny Goose Foods, Inc. v. Teamsters Local 70,* 415 U.S. 423, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974), a case concerning the duration after removal of a temporary restraining order entered by a state court, the court recognized the need for temporary restraining orders in certain circumstances but held that they should be restricted "to serving their underlying purpose of preserving the status quo and pre-

5. The principal prerequisite lacking, according to the Union, was an evidentiary hearing. Whether a hearing is actually required is open to question. See Part IV, *infra.* It nevertheless seems clear that the notice given and the hear- ing held by the district court before entering the temporary restraining order were insufficient to support a preliminary injunction of indefinite duration.

venting irreparable harm just so long as is necessary to hold a hearing, and no longer." *Id.* at 439, 94 S.Ct. at 1124, 39 L.Ed.2d at 450. In *Marshall Durbin Farms* the Fifth Circuit noted that the problem of giving a respondent time to prepare could be solved by the entry of a temporary restraining order pending a hearing. 446 F.2d at 358. The purpose of providing a means for speedy relief is served by interpreting the section as authorizing temporary restraining orders which, of course, is consistent with its plain language. The Senate Minority Report clearly construed the section as authorizing temporary restraining orders once a complaint has been issued. I *Legislative History of the Labor Management Relations Act of 1947* at 480 (G.P.O.1948). It is at least implicit in *United States v. United Mine Workers*, 330 U.S. 258, 270, 274–75, 290, 67 S.Ct. 677, 684, 686–87, 694, 91 L.Ed. 884, 900, 902–03, 911 (1947), that federal courts have the power to grant injunctions and temporary restraining orders except as limited by the Norris-LaGuardia Act. As we indicated earlier, section 160(h) exempts proceedings under section 160 from the provisions of that act.

No cases have been called to our attention, and we have found none, which directly face the question of whether temporary restraining orders are authorized by section 160(j).[6] We have found no cases where temporary restraining orders have been denied on the basis that a court does not have the power to enter such an order. Several have been called to our attention where such orders have been entered without discussion of the issue. *In re Puerto Rico Newspaper Guild Local 225*, 476 F.2d 856 (1st Cir. 1973); *Boire v. International Brotherhood of Teamsters*, 479 F.2d 778, 785 n.5 (5th Cir. 1973); *Douds v. International Longshoremen's Association*, 147 F.Supp. 103, 106 (S.D.N.Y.1956), *aff'd*, 241 F.2d 278 (2d Cir. 1957); *Douds v. Anheuser-*

*Busch Inc.*, 99 F.Supp. 474, 20 CCH Labor Cases ¶ 66,405 (D.N.J.1951).

We hold that federal district courts have the power to grant temporary restraining orders under section 160(j). In this case telephonic notice of the Board's intent to seek such an order was given to counsel for the Union several days before the order was entered. Counsel was given copies of various documents about 24 hours before the order was entered. The Union was formally served four and one half hours before the proceedings began. We hold that this notice was sufficient to give the district court jurisdiction under section 160(j). We need not prescribe minimum standards of notice at this time other than to indicate that the Board should give a respondent the most prompt and effective notice that can practically be given. Fed.R. Civ.P. 65(b) controls the operation of a temporary restraining order granted under section 160(j) except that ex parte restraining orders are not authorized.

### B. *Standards for Entering Temporary Restraining Orders*

In *Squillacote v. Graphic Arts Local 277*, 513 F.2d 1017, 1021 (7th Cir. 1975), this court recently stated the standard a district court should apply in determining whether to enter an injunction under section 160(*l*):

> [T]he district court is not called upon to decide the merits of . . . [the] charge. The Board does this. The district court guided by equitable principles determines instead whether the Board has reasonable cause to believe the defendant has violated . . . the Act. If the court finds reasonable cause, it must grant whatever injunctive relief "it deems just and proper."

It has been held that the standards under subsections (j) and (*l*) are the same. *Danielson v. Joint Board of Coat, Suit and Allied Garment Workers' Union*, 494 F.2d 1230, 1242 (2d Cir. 1974); *Boire v. Interna-*

---

**6.** The lack of cases is probably because temporary restraining orders are not normally appealable on an interlocutory basis and often the question of their validity is moot or merged with final judgment when the case is reviewed at a later time. We would have serious doubts about the propriety of this court reviewing the validity of the order if the validity of the contempt proceedings was not dependent on the validity of it.

*tional Brotherhood of Teamsters, supra,* 479 F.2d at 787 n.7. The courts are in general agreement that the district court must determine if the Board has reasonable cause to believe the act has been violated, but there appears to be some disagreement among the courts as to whether normal equitable standards should be used to determine the propriety of injunctive relief or whether a special standard should be applied. *See, e. g. Boire v. International Brotherhood of Teamsters, supra; Angle v. Sacks,* 382 F.2d 655 (10th Cir. 1967); *Minnesota Mining and Manufacturing v. Meter,* 385 F.2d 265 (8th Cir. 1967); *Danielson v. Joint Board of Coat, Suit and Allied Garment Workers' Union, supra; McLeod v. General Electric Co.,* 366 F.2d 847 (2d Cir. 1966), *decision set aside and remanded on other grounds,* 385 U.S. 533, 87 S.Ct. 637, 17 L.Ed.2d 588 (1967); *Note,* Temporary Injunctions Under Section 10(j) of the Taft-Hartley Act, 44 N.Y.U.L.Rev. 181 (1969). It is difficult, if not impossible, to articulate a universally applicable standard; nevertheless, it is clear to us that courts should consider such factors as the need for an injunction to prevent frustration of the basic remedial purpose of the act and the degree to which the public interest is affected by a continuing violation as well as more traditional equitable considerations such as the need to restore the status quo ante or preserve the status quo.

■ In this case the question of whether the Board had reasonable cause to believe the act was being violated tends to merge with the question of the propriety of equitable relief. The violations alleged were principally acts of violence and threats of violence. Few, if any, types of violations would present a more compelling case for immediate injunctive relief. Prevention of labor violence is one of the basic purposes of the federal labor acts. Violence has a severe coercive effect on employees' section 157 rights. It is completely contrary to the public interest, and it can quickly give the party willing to engage in such wrongful conduct an advantage. Thus, once the district court found that such conduct had occurred and was likely to recur, there could be little doubt that injunctive relief was appropriate.

Similar standards must be applied by a district court to determine whether to enter a temporary restraining order pending a hearing on a preliminary injunction. Similar equitable considerations are also involved. The district court must consider the need for relief pending a hearing on the preliminary injunction rather than pending adjudication by the Board; *i. e.,* the district court must consider what harm will occur during this shorter period. It must also consider whether the Board has made a preliminary showing that it has reasonable cause to believe that violations are occurring, and it must consider any arguments the respondent makes taking into account the short time the respondent will normally have had to prepare. Since the Board will have had time to investigate, its showing should be substantial. If the district court finds that a showing of reasonable cause and need has been made, it should grant a temporary restraining order pending a fuller hearing on a preliminary injunction.

■ In this case the Board made a substantial showing by affidavits that violence had occurred and that there was a need for relief. Counsel for the Union points to defects and weaknesses in the affidavits, but we are not persuaded to hold that the district court abused its discretion by granting the relief sought by the Board.

The Union argues that the restraining order was improperly broad in that it contained references to damaging the property of the general public and restraining or coercing persons "in any other manner." These references are not relevant to the contempt case. At most, such language should be stricken. *E. g. Communications Workers of America v. N.L.R.B.,* 362 U.S. 479, 80 S.Ct. 838, 4 L.Ed.2d 896 (1960); *Consolidation Coal Co. v. Disabled Miners of Southern W.Va.,* 442 F.2d 1261 (4th Cir. 1971). *But see Angle v. Sacks, supra,* 382 F.2d at 661. It would serve no purpose for us to rule on the propriety of this language at this time.

## II. Duration of the Temporary Restraining Order

### A. *The Initial Order*

The temporary restraining order as originally entered was to expire after seventeen days. Initially the Union argued that the order was not valid beyond five days because of the limitations in the Norris-La-Guardia Act. It now recognizes that this argument has been foreclosed by *Muniz v. Hoffman, supra.* It still argues that the order could not properly have been entered for more than ten days.

The district court indicated that it did not feel bound by the ten day limitation in Fed.R.Civ.P. 65(b) because the order was not being entered ex parte, but the order indicated that the court found the Union's request for discovery good cause for extending the order beyond ten days. A fair reading of the transcript can only indicate that the district court extended the order to accommodate the Union. The court indicated at one point that it contemplated a hearing around the ninth or tenth day. The Board indicated that it could file its brief promptly. The Union wanted an opportunity for discovery.

The district court indicated that if the Union wanted discovery, it should, perhaps, consent to an extension. The Union counsel refused for fear of prejudicing an appeal, but stated: "I think that the necessity for discovery would be a good cause shown for the extension of the order, but I would prefer for the order to appear in that light rather than in the light that we consent, because we object to the restraining order being entered in the first place . . . ."

 Under these circumstances we cannot find that the district court in any way abused its discretion in entering the temporary restraining order for more than ten days. We note that the Union's right to discovery is less clear than its counsel represented to the district court, but the

district court did not abuse its discretion by granting discovery. *San Francisco-Oakland Newspaper Guild v. Kennedy,* 412 F.2d 541, 546 (9th Cir. 1969).[7]

The Union argues that there was no reason for discovery because no evidentiary hearing was held. At the time the district court granted discovery, it apparently had not decided against holding an evidentiary hearing. This decision was only reached after the extension when it became apparent that the transcript from the hearing before the administrative law judge on the underlying complaint would be available. Also, it has not been demonstrated as to why the results of discovery procedure could not have been submitted for the court's consideration along with affidavits and the transcript of the hearing before the administrative law judge.

### B. *The Extensions*

The Union argues that the validity of the extension beyond 20 days is not moot because criminal contempt proceedings are still being contemplated and, citing *Walker v. Birmingham,* 388 U.S. 307, 87 S.Ct. 1824, 18 L.Ed.2d 1210 (1967); *In re Green,* 369 U.S. 689, 82 S.Ct. 1114, 8 L.Ed.2d 198 (1962); and *United States v. United Mine Workers, supra,* that this is the proper time to challenge the validity of the extensions of the restraining order. The Board argues the validity of the extensions is moot and, citing *Granny Goose Foods, Inc. v. Teamsters Local 70, supra,* that the validity can be challenged should criminal contempt proceedings be brought.

The district court granted the extensions beyond twenty days apparently on the grounds that the twenty day limitation of the Rule did not apply because the restraining order was not entered ex parte. *But see Granny Goose Foods, Inc. v. Teamsters Local 70, supra,* 415 U.S. at 432–34 n.7, 443–44, 94 S.Ct. at 1121 n.7, 1126–27, 39

---

7. *United States v. Cappetto,* 502 F.2d 1351 (7th Cir. 1974), *cert. denied,* 420 U.S. 925, 95 S.Ct. 1121, 43 L.Ed.2d 395 (1975), does not indicate that the Union has a right to discovery in this case. It held that the government had the right

to discovery in a civil case brought under the Organized Crime Control Act of 1970. 18 U.S.C. § 1964. It does not undermine the premises of *San Francisco-Oakland.*

L.Ed.2d at 446–447 n.7, 452–53 and cases cited therein; *Telex Corp. v. International Business Machines,* 464 F.2d 1025 (8th Cir. 1972); 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2962 at 619–22 (1973). *Cf. Connell v. Dulien Steel Products Inc.,* 240 F.2d 414 (5th Cir. 1957); 7 *Moore's Federal Practice* ¶ 65.07 (2d ed. 1975).

■ The general rule is that the validity of a temporary restraining order is moot when the court issues a preliminary injunction. *Glen-Arden Commodities, Inc. v. Costantino,* 493 F.2d 1027, 1030 (2d Cir. 1974); *Entin v. Stevens,* 323 F.2d 894, 898 (8th Cir. 1963); *United Mine Workers v. United States,* 85 U.S.App.D.C. 149, 177 F.2d 29, 36 (1949), *cert. denied,* 338 U.S. 871, 70 S.Ct. 140, 94 L.Ed. 535. This is true even though persons were held in criminal contempt for failing to obey that order. *United Mine Workers v. United States, supra* at 36.

■ The cases cited by the Union do not convince us that the general rule should not be applied in this case. They in essence hold that an order entered by a court with jurisdiction must be obeyed until it is reversed by proper procedures. If a person violates an invalid order which has not been reversed, he may be charged with criminal contempt. Courts have on occasion made exceptions to this rule. For example, in *Granny Goose* the Supreme Court permitted a challenge to a criminal contempt conviction on the grounds that the restraining order which the defendant allegedly violated had expired five months prior to the alleged contemptuous actions. *See also Maness v. Meyers,* 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *United States v. Ryan,* 402 U.S. 530, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971). This doubt concerning whether the validity of the extensions may be challenged in a subsequent criminal contempt action does not indicate that we should decide at this time whether the extensions were valid. If it is ultimately held that invalidity is a defense to criminal contempt, the defendant will have his day in court at that time. If it is ultimately held that invalidity is not a defense to contempt, our

reversal at this time would have no effect on that action because the order would still have been outstanding at the time the violations occurred. No violations of the order can occur in the future because the restraining order has been superceded by an injunction.

■ Thus, the validity of the extensions to the restraining order is moot with respect to its past validity and premature with respect to criminal contempt. Accordingly appeal No. 75–1378 will be dismissed. Because the issue was not raised or briefed, we have not specifically addressed ourselves to the first 3 days of the first extension, which 3 days would fall within the period of 20 days following the initial 17 day temporary restraining order. In the event of subsequent criminal contempt proceedings, separate consideration might be required as to the 3 days.

### III. Contempt Holdings

■ The Union first argues that the contempt holdings are invalid because the restraining order was erroneously issued. Contrary to the general rule regarding criminal contempt cases, a finding of civil contempt is invalidated if the underlying order is invalidated. *United States v. United Mine Workers, supra,* 330 U.S. at 295, 67 S.Ct. at 696, 91 L.Ed. at 913. We have already held that the temporary restraining order was valid during the period of time in which the actions that the district court found contemptuous occurred. The remaining arguments of the Union concern the validity of the contempt proceedings themselves. It argues 1) that the district court did not apply the proper standard of proof, 2) that the district court did not apply the proper law of agency, and 3) that the relief granted by the district court was inappropriate for civil contempt proceedings. Initially, the Union also argued that it had a right to a trial by jury on the contempt issues, but it has abandoned this position in light of *Muniz v. Hoffman, supra.*

■ In civil contempt proceedings the Board must prove its case by clear and

convincing evidence. *N.L.R.B. v. Nickey Chevrolet Sales, Inc.,* 493 F.2d 103, 106 (7th Cir. 1974), *cert. denied,* 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60. The order of the district court did not indicate what standard the district court applied in reaching its factual conclusions, but it discussed the case in open court. In the discussion it noted some of the weaknesses of the Board's case, questioning why no videotape or photographic evidence was presented. It indicated that the resolution of the factual disputes had to be based on an evaluation of the credibility of the various witnesses since there was "word for word" confrontation in their testimony. The court described one witness's testimony as the most "clear and convincing." Finally, the court stated:

> If you look at the testimony on February 18th and weigh it as apparently I have to do, the propensity of each of the witnesses to speak the truth with reference to the event of that day, I am *compelled* to the finding and I make this as a finding of fact, that there were in fact violations of the temporary restraining order and that there were specific violations on the 18th of February, 1975. (Emphasis added.)

The court later noted that some of the conduct occurred on other days. Based on these statements we conclude that the district court applied an appropriate standard in deciding the contempt case. The factual findings of the court are subject to the clearly erroneous rule, and we do not find the district court clearly erroneous. *E. g., Hoffman v. Cement Masons Local 337,* 468 F.2d 1187, 1193 (9th Cir. 1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2269, 36 L.Ed.2d 964 (1973).

The district court order does not indicate the standards of agency the court applied, but orally the court indicated that it was applying the general law of agency. The Union was held in contempt for the conduct of its agents; the individual respondents were held responsible for their own actions.

The Union argues that general agency standards do not apply to the contempt action but rather the more stringent standards of the Norris-LaGuardia Act apply. 29 U.S.C. § 106. In *Madden v. Grain Elevator Workers Local 418,* 334 F.2d 1014 (7th Cir. 1964), *cert. denied,* 379 U.S. 967, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965), this court applied the analysis that the Supreme Court recently adopted in *Muniz v. Hoffman, supra,* to reject such a conclusion. In *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), the Supreme Court held that ordinary standards of agency should be applied in actions arising under 29 U.S.C. § 187, a part of the Labor Management Relations Act. It nevertheless held that section 106 applied to state law claims over which a district court has pendent jurisdiction as a result of their association with claims under section 187. The Union contends that this contempt action should be analogized to the state claims in *Gibbs* and that therefore the Norris-LaGuardia Act standards should apply. We disagree. The state claims arose under a body of law wholly separate from the Labor Management Relations Act. The Supreme Court was concerned that punitive damages could be recovered under state law. It was also concerned that an international union could be held to have ratified violence because it involved itself in a dispute primarily involving a local union after the violence had occurred. It was fairly clear that the representatives of the international union had calmed the situation.

The contempt action in this case arises out of an injunction entered under provisions of the Labor Management Relations Act. The power to coerce by contempt is concomitant to the power to enter an injunction and so the same standards must be applied. To hold otherwise would place the district court in the intolerable position of being able to enter an injunction against a union if it found it responsible for unfair practices under ordinary standards of agency law but being unable to enforce the injunction through contempt unless the union became responsible under the higher Norris-LaGuardia Act standard.

On the facts of this case we cannot find that the district court erred in

finding the union in contempt. The district court found that the Union's picket captains were not only present at the time unfair practices occurred but also participated in them. Though the Union disclosed the terms of the restraining order to its members, it at no time took action to compel its members to obey the order as by imposing penalties on its members. The Union tacitly approved of the violence from the beginning of the strike, and there was a history of violence in prior strikes. After the district court entered the restraining order, the Union had a duty to take some action to reject the continuation of unfair practices. There was sufficient evidence presented for the district court to find that the Union did not do this. Agency, of course, can be proved by circumstantial evidence. *E. g., Schauffler v. Highway Truck Drivers Local 107*, 230 F.2d 7, 10 (3d Cir. 1956). That a union may be held responsible for the conduct of its picket captains is not a wholly novel proposition. *Service Employees Local No. 50*, 208 N.L.R.B. 117, 121 (1974); *Electrical Workers Local 761*, 126 N.L.R.B. 123, 131 (1960), *enf.*, 287 F.2d 565 (6th Cir. 1961).

The Union argues that it was inappropriate for the court to impose a $500.00 fine and order certain picket captains removed from the picket line for the duration of the restraining order because this relief was punitive rather than coercive in nature and therefore could not be imposed without criminal proceedings. Judicial sanctions in a civil contempt proceeding may be imposed either to coerce a defendant into compliance with the court's order or to compensate a complainant for losses sustained. *United States v. United Mine Workers, supra*, 330 U.S. at 303–04, 67 S.Ct. at 701–02, 91 L.Ed. at 917–18. Increasing daily fines and even jail sentences may be used by the district court to compel compliance with its orders. *Madden v. Grain Elevator Workers Local 418, supra*. Attorneys' fees and expenses, including the salaries of Board personnel in preparing and prosecuting a contempt petition, may be awarded as compensation. *Nelson v. Steiner*, 279 F.2d 944, 948 (7th Cir. 1960); *N. L. R. B. v. Building Services Employees Local 254*, 376

F.2d 131, 136 (1st Cir. 1967), *cert. denied*, 389 U.S. 856, 88 S.Ct. 86, 19 L.Ed.2d 123. Though there was no direct evidence of the Board's expenses, in light of the length of the hearing and the documents filed, it is clear that $500.00 provided little more than token compensation to the Board. The Union argues that regardless of whether such relief is appropriate in general, it was inappropriate in this case because the Board did not seek compensatory relief. It is true that in its oral statements to the court the Board only sought coercive fines; nevertheless, the petition sought "such other and further relief as may be just and proper in consideration of the premises." We cannot find that the district court abused its discretion in granting compensatory relief.

Though the propriety of the removal relief is at least arguably moot since the prohibition ended when the restraining order was superceded by the preliminary injunction, we do not find that the district court abused its discretion by granting such relief for the remainder of the restraining order's duration. While not normally the type of relief contemplated by civil proceedings, a few days cooling off period might have had a very beneficial effect in the accomplishment of the statutory objective. *Cf. Lance v. Plummer*, 353 F.2d 585, 591–92 (5th Cir. 1965), *cert. denied*, 384 U.S. 929, 86 S.Ct. 1380, 16 L.Ed.2d 532 (1966).

## IV. Preliminary Injunction

The Union argues that the preliminary injunction was improperly entered because the district court did not hold an evidentiary hearing but rather entered the injunction on the basis of oral argument, affidavits, and the transcript of a hearing before an administrative law judge on the underlying complaint. We could only reverse on this basis if we found that the district court had abused its discretion. 11 C. Wright and A. Miller, *Federal Practice and Procedure* § 2949 at 474 (1973). The Union places reliance on such cases as *Sims v. Greene, supra; General Electric Co. v. American Wholesale Co.*, 235 F.2d 606 (7th Cir. 1956); *Securities and Exchange Commission v.*

*Frank,* 388 F.2d 486 (2d Cir. 1968); *Eisenberg v. Hartz Mountain Corp.,* 519 F.2d 138 (3d Cir. 1975).

*Sims* was not a labor case, but in it the Third Circuit held that a hearing with oral testimony was required to resolve conflicts between affidavits. The Third Circuit recognizes that a hearing is not necessary in every case. *Industrial Electronics Corp. v. Cline,* 330 F.2d 480 (3d Cir. 1964). In *General Electric* this court reached a similar conclusion regarding the need for hearings. In *Frank* the Second Circuit discussed at some length the need for hearings before entry of a preliminary injunction. It first noted that in cases such as that one where no restraining order was outstanding and where there was no particular exigency, hearing standards might be higher than where there was a need for speed. It then discussed three gradations of the need for evidentiary hearings; *viz.,* where the facts are undisputed and the issues concern the law, then argument, not a hearing, is needed; in cases where there is little dispute as to the raw facts but much dispute as to the inferences to be drawn from them, a hearing should be held if practical; finally in cases which turn sharply on disputes of fact, a hearing might be essential regardless of the exigencies of the situation. *Frank* might be summarized as holding that the need for an evidentiary hearing depends on the degree to which the district court must resolve disputed questions of fact to decide whether to enter an injunction. In *Eisenberg* the Third Circuit decided that it was not "just and proper" in the sense of being "in the public interest" to enter a preliminary injunction on the facts of that case. In a footnote the court indicated that it did not need to decide whether the district court erred by denying an evidentiary hearing but stated:

> [W]e observe that disruption of commerce to the prejudice of the public interest is likely to be demonstrable without an evidentiary hearing in Section 10(*l*) [29 U.S.C. § 160(*l*)] cases. But in many Section 10(j) [29 U.S.C. § 160(j)] cases, *where this feature is absent,* an evidentiary hearing may be essential to informed de-

cision whether an injunction would be in the public interest. (Emphasis added.) 519 F.2d at 143 n.5.

Of course, in a case such as the one at bar where violence is involved, the public interest is much clearer than on the circumstances of *Eisenberg.*

■ The Board cites authority indicating that a hearing is not required. According to the Board, the purpose of an evidentiary hearing is to resolve disputed questions of fact. In ruling on whether to grant a preliminary injunction, it is not the role of the district court to make credibility determinations; these are to be resolved by the Board when considering the underlying complaint; the district court has the limited function of determining whether reasonable cause exists. *Wilson v. Milk Drivers Local 417,* 491 F.2d 200 (8th Cir. 1974); *Kennedy v. Teamsters Local 542,* 443 F.2d 627 (9th Cir. 1971); *San Francisco-Oakland Newspaper Guild v. Kennedy, supra.* These cases involved section 160(*l*) proceedings. In *Teamsters Local 542* and *San Francisco* the Ninth Circuit held that evidentiary hearings were not required. A district court in our circuit has reached a similar conclusion in a section 160(j) case. *Squillacote v. United Automobile, Aerospace and Agricultural Implement Workers,* 383 F.Supp. 491 (E.D. Wis.1974). This court has held that in a case involving the public interest, rather than purely private interests, injunctive relief may be granted on affidavits. *Federal Trade Commission v. Rhodes Pharmacal Co.,* 191 F.2d 744 (7th Cir. 1951). In *Frank* the Second Circuit noted that it had declined to indicate whether it would follow *Rhodes,* but it noted that Congress had the power to dispense with the requirement of an evidentiary hearing when a federal agency seeks relief and distinguished *Rhodes* on the grounds that the statute involved in that case presented a much stronger basis than anything in the securities laws for holding that a court was not to apply normal standards. We recently indicated that *Rhodes* is still the law of this Circuit. *Federal Trade Commission v. National Commission on Egg Nutrition,* 517 F.2d 485, 489 (7th Cir. 1975).

In spite of these conflicting arguments, we conclude that it would not be appropriate for us to decide this issue at this time. The Union's appeal regarding the preliminary injunction is not taken from the order entering the injunction but rather from the denial of a motion to vacate the injunction. The Union indicates the basis for its motion in its brief: "Here the motion to vacate and dissolve was made on the grounds which had earlier been advanced to the court and the court rejected it on that basis." There is no allegation that the Union showed any changed circumstances from the time the injunction had been entered. Apparently the reason for the motion was to provide a basis for appeal since the time for appeal had expired from the original order entering the injunction.

In *Stiller v. Squeez-A-Purse Corp.*, 251 F.2d 561 (6th Cir. 1958), the Sixth Circuit held that an appeal would not be considered properly filed where the time for appeal expires, and thereafter repetitive motions are made to vacate a preliminary injunction, and an appeal is taken from the last such motion. This rule applies with similar force whenever a motion to vacate is filed for no other apparent purpose than to escape the time limitations of Fed.R.App.P. 4. See 9 *Moore's Federal Practice* ¶ 110.20[2] at 239 (2d ed. 1975). In some cases, of course, a court will again be able to consider the validity of an interlocutory order after a final judgment except to the extent the issue of the validity of that order has merged with the issue of the propriety of the final order or has become moot. *See United States v. Chicago*, 534 F.2d 708 (7th Cir. 1976). *American Grain Separator Co. v. Twin City Separator Co.*, 202 F. 202 (8th Cir. 1912), was rejected as compelling a contrary rule in *Fern v. Thorp Public School*, 532 F.2d 1120 (7th Cir. 1976). *Fern* does not compel a contrary result because of the special circumstances involved in that case. This court will continue to apply the rule foreclosing appeal on a pragmatic basis. *Hyde Construction Co. v. Koehring Co.*, 388 F.2d 501 (10th Cir. 1968), *cert. denied*, 391 U.S. 905, 88 S.Ct. 1654, 20 L.Ed.2d 419, may be similarly distinguished

as involving special circumstances. *Alloyd General Corp. v. Building Leasing Corp.*, 361 F.2d 359 (1st Cir. 1966), is inapposite.

In accordance with the foregoing opinion the appeals in Nos. 75–1378 and 75–1563 are dismissed and the orders appealed from in Nos. 75–1377 and 75–1379 are affirmed. The appellants shall bear costs on all appeals.

Nos. 75–1377 and 75–1379 AFFIRMED.

Nos. 75–1378 and 75–1563 DISMISSED.

## APPENDIX

### DISTRICT COURT RESTRAINING ORDER

NOW, THEREFORE IT IS ORDERED:

That respondent Local 248, Meat & Allied Food Workers, affiliated with Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO, its officers, representatives, agents, servants, employees, and all members and persons acting in concert or participation with it be and hereby enjoined and restrained until Friday, February 28, 1975, at 7:34 P.M., and not longer without further order of this Court, from:

(a) Blocking and hampering ingress and egress of vehicles to and from Association premises; obstructing, hindering, preventing or stopping or attempting to obstruct, hinder or prevent any employee or other persons doing business with the Association, from going to or coming from Association premises; threatening Association employees, supervisory personnel, employees of other employers seeking to do business with the Association members, and/or members of the general public with physical violence, bodily injury or property damage, or by damaging or threatening to damage or destroy the property of the Association, property and vehicles of Association employees, supervisory personnel, employees of other employers seeking to do business with the Association and/or of the general public; placing harassing, threatening and/or obscene telephone calls to and leaving threatening notes at the homes of Association employees; hurling rocks and other objects

and/or shooting at employees and/or at vehicles of Association employees; assaulting Association employees; discharging firearms in the vicinity of Association premises; recording license plate numbers of vehicles entering into, exiting from or parked at Association premises; photographing employees as they enter or exit from Association premises; placing nails, glass or other sharp objects on the Association driveways or parking lots; following Association employees as they leave work and pursuing vehicles driven by Association employees and employees of other employers doing business with the Association, and swerving at such automobiles and driving in a reckless fashion;

(b) In any other manner restraining or coercing employees of the Association or other person [sic] seeking to do business with the Association in the exercise of their rights as guaranteed under Section 7 of the Act.

IT IS FURTHER ORDERED that respondent give to each member of respondent, its officers, representatives, agents, servants, employees and all persons acting in concert or participation with it, in writing, clear and precise instructions, orders and directions to specifically refrain from engaging in any of the aforesaid conduct described in paragraphs (a) and (b) of this Temporary Restraining Order. And to see that the instructions, orders, and directors are enforced and complied with by its members, officers, representatives, agents, servants, employees and all persons acting in concert or participation with respondent.

IT IS FURTHER ORDERED that petitioner answer the interrogatories submitted to it by respondent and comply with respondent's motion for discovery by *Tuesday, February 18, 1975.* Respondent has argued its need for compliance with these discovery procedures in order to prepare its response to the petition for a 10(j) injunction. In order to accommodate this request, respondent's brief will not be due until *Friday, February 21, 1975,* and petitioner's reply brief will not be due until *February 28,*

*1975,* for which reason the Court has seen fit to set the time for expiration of this order beyond the 10-day limit established by Rule 65(b) of the Federal Rules of Civil Procedure. In accord with Rule 65(b), the Court finds that respondent's request for discovery constitutes good cause for such extension of this order.

IT IS FURTHER ORDERED that service of a copy of this order be forthwith made by a United States Marshal upon respondent Local 248, Meat & Allied Food Workers, affiliated with Amalgamated Meat Cutters and Butcher Workmen of North America, AFL–CIO and upon the Milwaukee Independent Meat Packers Association, the charging party before said Board, in any manner provided in the Federal Rules of Civil Procedure for the United States District Courts, or by registered mail, and that proof of such service be filed herein.

Dated at Milwaukee, Wisconsin this 11th day of February, 1975, at 7:34 P.M. (Emphasis in original.)