George **SQUILLACOTE**, Regional Director of the Thirtieth Region of the National Labor Relations Board, for and on behalf of the National Labor Relations Board, Petitioner,

v.

**GRAPHIC ARTS INTERNATIONAL UNION (GAIU) LOCAL #277**, and Graphic Arts International Union, AFL–CIO, Respondents (two cases).

Nos. 74–C–485 and 74–C–508.

United States District Court,
E. D. Wisconsin,
Milwaukee Division.

Jan. 7, 1975.

George Strick, N. L. R. B., Milwaukee, Wis., for petitioner.

Daniel L. Shneidman, Milwaukee, Wis., for respondents.

## DECISION AND ORDER

WARREN, District Judge.

The Regional Director for the Thirtieth Region of the National Labor Relations Board (hereinafter "Board") has petitioned this Court for preliminary injunctive relief pursuant to Section 10(l) of the National Labor Relations Act, as amended (hereinafter "Act"), 29 U.S.C.

1. Although the charging party, Kable Printing Company, is not a party to the proceedings in this Court, it was also heard in

§ 160(l) in each of the above cases, pending a determination by the Board of complaints alleging unfair labor practices by the respondent union and its Local 277. Respondents in each case are charged with engaging in secondary boycott activity in violation of Section 8(b)(4)(i) and (ii)(B) of the Act.

In view of the fact that the parties, the legal issues, and the essential operative facts are identical, these cases have been consolidated for purposes of the proceedings relevant hereto. All parties [1] have submitted briefs and affidavits and have argued the issues herein orally on several occasions. In addition, the petitioner and respondents have, by stipulation, submitted the exhibits introduced and the transcript of the testimony of witnesses appearing before National Labor Relations Administrative Law Judge Benjamin K. Blackburn in proceedings held before him on December 3 and 4, 1974, regarding these same matters, in lieu of an evidentiary hearing in this Court. Having carefully considered the extensive evidentiary submissions, the circumstances surrounding the labor dispute and the arguments of counsel, the Court concludes that the Board has demonstrated reasonable cause to believe that respondents are engaging in illegal secondary boycott activities and that to issue injunctive relief would be both just and proper under the facts of this case.

## I. FACTUAL BACKGROUND

Kable Printing Company, the charging party herein, is a wholly-owned subsidiary of Western Publishing Company and is engaged in the engraving and printing industry in Mount Morris, Illinois. In early 1973, Kable and its parent undertook to investigate certain problems which existed throughout the Kable plant that had caused Western Publishing Company to seriously entertain the prospect of closing down the

terms of oral argument and written briefs on the issues under discussion herein.

Kable plant or moving the Kable operation. Kable's return on investment had been between five and six percent instead of the anticipated ten to fifteen percent. At that time, there were eight unions representing nine bargaining units of which Kable employees were members. With the exception of the roto-processing and janitorial units, all contracts were due to expire in 1973.

In preparation for contract negotiations with the various unions and as part of its general investigation, Western initiated several studies to determine how well or poorly Kable fared economically with its competitors in the industry. Among the problems disclosed in the various units of the plant, the studies revealed that Kable's roto-processing unit was overmanned to the extent of nearly one-half million dollars. No cross-training program had been developed to allow the photoengravers to use their skills on other jobs in their own or other departments, and no photoengraver had been laid off for nearly fifteen years. As a result, Western estimated that one hour of labor in the roto-processing unit was wasted for every two hours of productive labor.

In order to eliminate these and other work practice problems and to improve profitability, Western compiled detailed proposals which it submitted to all unions involved in the impending negotiations by December 7, 1973. At the time of the Board hearing on December 3 and 4, 1974 herein, agreement had been obtained on new contracts, either through negotiations or arbitration, with all units except the bookbinders and the lithographers and photogengravers represented by Mt. Morris Graphic Arts International Union, Local 91–P.

The labor contract with Local 91–P was due to expire on March 31, 1974. Negotiations for a new contract between Kable-Western and Local 91–P, however, had begun on January 1, 1974 and continued through March and April. By April 24 or 27, 1974, Kable had submitted a complete proposal for a new contract to Local 91–P. The parties could not agree on the proposals, and on May 10, 1974, Local 91–P struck.

By the latter part of June, 1974, Kable-Western had begun to consider phasing out of its rotogravure operations. To that end, Kable representatives began discussing with outside engraving shops the possibility of having such engravers produce the film positives and rotogravure cylinders for Kable. On July 3, 1974, this possibility was conveyed to Local 91–P in the event an agreement could not be reached. A further meeting was held on July 10, 1974, and on July 22, 1974, M. Michael Connolly, corporate vice president, announced during a bargaining session that Kable would close down its roto-processing department. He also proposed that the parties negotiate implementation of a phase-out including such items as severance benefits and future employment. Local 91–P refused to discuss any phase-out operation, but to date, Kable continues its offer. By letter dated July 24, 1974, which recited as reasons therefor the failure of the Union to make demands with which the company could economically comply, (General Counsel's Exhibit 4), Connolly confirmed Kable's decision.

Thereafter, Kable informed both S & M Rotogravure Service, Inc., New Berlin, Wisconsin and Mueller Color Plate Company, Milwaukee, Wisconsin, of its decision to eliminate its roto-processing department, and, effective August 1, 1974, Kable entered into contracts with S & M and Mueller by which the latter companies would produce film positives and cylinders for Kable. The employees of S & M as well as the rotogravure employees of Mueller are all represented by respondent Graphic Arts International Union (GAIU) Local 277.

Pursuant to these contracts, Kable placed various orders for cylinders to be engraved by S & M and Mueller. In each instance, the respondent GAIU and its local informed the employees of S & M and the rotogravure employees of Mueller that work on Kable cylinders was "struck work" and, therefore, proscribed. In compliance with the Union

directive, all work on the cylinders ceased. Pursuant to temporary restraining orders entered herein by this Court on November 14 and 26, 1974, work on production cylinders did resume, but that work also has ceased with the expiration of the temporary restraining orders.

Petitioner challenges the legality of respondents' conduct in view of the fact that Kable has allegedly ceased operation of the rotogravure portion of its business. It argues that since the rotogravure work Kable has subcontracted to S & M and Mueller would never more be done by the striking members of Local 91–P, that work does not constitute "struck work." Respondents do not dispute that their conduct was designed to force S & M and Mueller to cease doing business with Kable by forcing the employees of S & M and Mueller to cease working on Kable cylinders in furtherance of Local 91–P's labor dispute with Kable. They argue instead that Kable is not out of the rotogravure portion of its business, for which reasons S & M, Mueller, and Kable are ally companies and respondents' conduct privileged. Furthermore, they urge that injunctive relief would be unjust and improper and that, in essence, the dispute herein is of a contractual nature between the respondents and the alleged ally companies such that this Court should defer its resolution to arbitration. There is no dispute as to the jurisdiction of this Court, the status of the respondents as labor organizations within the meaning of the National Labor Relations Act, and the status of S & M Rotogravure Service, Inc., Mueller Color Plate Company and Kable Printing Company as employers engaged in commerce or in industries affecting commerce as defined in Sections 2(6) and (7) of the Act.

## II. SUFFICIENT EVIDENCE TO DEMONSTRATE REASONABLE CAUSE TO BELIEVE THE EXISTENCE OF A SECONDARY BOYCOTT

The authorization by which the Board secures injunctive relief against illegal secondary boycott activity in a federal district court is contained in Section 10(*l*) of the National Labor Relations Act, 29 U.S.C. § 160(*l*):

"Whenever it is charged that any person has engaged in an unfair labor practice within the meaning of paragraph (4)(A), (B), or (C) of section 158(b) of this title, or section 158(e) of this title or section 158(b)(7) of this title, the preliminary investigation of such charge shall be made forthwith . . . . If, after such investigation, the officer or regional attorney to whom the matter may be referred has reasonable cause to believe that such charge is true and that a complaint should issue, he shall, on behalf of the Board, petition any United States district court within any district where the unfair labor practice in question has occurred, is alleged to have occurred, or wherein such person resides or transacts business, for appropriate injunctive relief pending the final adjudication of the Board with respect to such matter. Upon the filing of any such petition the district court shall have jurisdiction to grant such injunctive relief or temporary restraining order as it deems just and proper, notwithstanding any other provision of law. . . . "

As a prerequisite to the issuance of such injunctive relief, however, this Court must find that there is reasonable cause to believe that a violation of the Act, as charged, has been committed, and that such equitable relief is just and proper. Kennedy v. Sheet Metal Workers Int. Ass'n, Local 108, 289 F.Supp. 65, 85 (C.D.Cal., 1968); Madden v. International Organization, etc., 259 F.2d 312, 313 (7th Cir., 1958), cert. den., 358 U.S. 909, 79 S.Ct. 236, 3 L.Ed.2d 229; Cosentino v. United Brotherhood of Carpenters, etc., 265 F.2d 327, 330 (7th Cir., 1959); Madden v. International Hod Carriers, etc., Union, 277 F.2d 688, 690 (7th Cir., 1960). The Board has demonstrated "reasonable cause" if it has "come forward with evidence sufficient to spell out a likelihood of violation." Douds v. Milk Drivers and Dairy Employees Union, 248 F.2d 534, 537 (2d

Cir., 1957). *See also*, Madden v. International Organization, *supra*, 259 F.2d at 313. This Court, on the evidence before it, concludes that the Board has met such a burden. In the instant case, the Board theorizes that if Kable has gone out of the rotogravure portion of its printing operation, any work of that nature which is now done by either S & M or Mueller could not be "struck work." The Court finds this theory neither frivolous, insubstantial, nor legally untenable. *See, e. g.*, Samoff v. Building and Constr. Tr. Coun. of Philadelphia and V., 475 F.2d 203, 207 (3rd Cir., 1973) and Danielson v. Joint Bd. of Coat, Suit and Allied Gar. Wkrs., 494 F.2d 1230, 1245 (2d Cir. 1974). In fact, such theory is perfectly consistent with the definition of "struck work" as that term has evolved:

" . . . [A]n employer is not within the protection of § 8(b)(4)(A) when he knowingly does *work which would otherwise be done by the striking employees of the primary employer* and where this work is paid for by the primary employer pursuant to an arrangement devised and originated by him to enable him to meet his contractual obligations. . . ." National Lab. Rel. Bd. v. Business Mach. and Office A., etc., 228 F.2d 553, 559 (2d Cir., 1955) (emphasis added).

*See also*, Douds v. Metropolitan Federation of Architects, etc., 75 F.Supp. 672, 677 (S.D.N.Y., 1948), If indeed the work which is being done by the employees of S & M and the rotogravure employees of Mueller would not otherwise be done by the striking employees of Kable because Kable is out of the rotogravure portion of its business, the work would appear to lose that peculiar characteristic which renders it struck work. The Court does not view this theory as an attempt to redefine "struck work." Rather, it views the situation as one wherein the facts, when applied to the legal definition, are simply found wanting. Having thus concluded that petitioner's theory is legally tenable and substantial, it remains to consider whether the evidence discloses reasonable cause to believe that Kable is out of the rotogravure portion of its business and went out of such business for legitimate economic reasons.

 There` is no doubt but that management has the inherent right to terminate a portion of its business if it does so for legitimate economic reasons. *See*, Textile Workers v. Darlington Co., 380 U.S. 263, 274–275, 85 S.Ct. 994, 13 L.Ed.2d 827 (1965); San Diego Newspaper Web Pressmen's Union No. 48, et al. (Publisher's Offset, Inc.) 196 N.L.R.B. 412 (1972) and Summit Tooling Co. and Ace Tool Engineering Co., et al., 195 N.L.R.B. 479 (1972). The evidence discloses that before any of its contracts with the various unions expired, Kable undertook to negotiate with them in an effort to convert a plant which its parent corporation considered closing down into an economically feasible operation. With one of those unions, Local 91–P, it continued to bargain until it became apparent that Kable-Western could not meet the Local's demands and still economically maintain the remaining Kable operation. *See*, General Counsel's Exhibit 4. Regardless of the fact that this decision was made after unproductive bargaining sessions and during the course of a strike, the Court for purposes of this decision, finds that there is reasonable cause to believe that Kable's decision was prompted by economic considerations rather than the failure of collective bargaining. To adopt respondents' position and hold otherwise would to this Court necessitate the conclusion that a company could *never* legitimately terminate a portion of its business during the course of a strike or after unsuccessful attempts to bargain with the union—a position which is totally inconsistent with the decision of the National Labor Relations Board in District 65, Distributive Workers of America and S.N.S. Distributing Service, et al., 211 N.L.R.B. No. 62 (1972), wherein the primary employer finalized its decision to close down one phase of its operations after unsuccessful attempts to negotiate

with the Union. Moreover, to the extent that Brewery Workers Union No. 8 et al. and Bert P. Williams, Inc., 148 N.L.R.B. 728, might compel a result consistent with respondents' position but yet inconsistent with *S.N.S.*, this Court defers its consideration to the National Labor Relations Board. For the purposes of these proceedings, the Board has demonstrated reasonable cause to believe that Kable terminated its roto-processing department for legitimate economic reasons. To that end, the Court further notes that the "timing" of Kable's contracts with S & M and Mueller did not coincide with the inception of the strike such that this Court is compelled to rule in accord with *Bert Williams*. Had Kable's objective been to avoid the economic impact of the strike, it seems rather difficult to believe that Kable would have allowed the Union to impede its production for well over two months rather than terminate its roto-processing department and finalize arrangements to subcontract its work on the eve of the strike, as did the O'Brien Distributing Company in the *Bert Williams* case.

As to whether Kable has or has not in fact terminated its roto-processing department, the Court finds reasonable cause to believe the affirmative. The testimony adduced at the December 3 and 4 hearing before Judge Blackburn reveals that since July 22, 1974, Kable has hired no replacements for the 110 persons who had been employed in the roto-processing department. Furthermore, it does no film processing work whatsoever, and it has disposed of nearly all of its equipment, including a laydown machine capable of handling all sizes of cylinders that Kable regularly uses, which was shipped to Mueller Color Plate and has since been installed pursuant to Mueller specifications. Kable has disposed of an automatic film processor, a vacuum table for viewing and retouching, four chairs, four fans, drying equipment, a densitometer and sixteen trucks whose purpose was to transport the cylinders from one area to another. Western Publishing Company has also announced to its stockholders, by means of its third quarter report (General Counsel's Exhibit 16) that Western has terminated the roto-processing department at Kable. In addition, Kable has signed long-term contracts with several suppliers to perform the rotogravure work which had been done in its roto-processing department.

Although the Court is cognizant that Kable still maintains a work force which varies in number from five to 22, the Court notes that such persons are totally unskilled supervisory or clerical employees whom Kable has retained because it is unable to distribute its work, in view of the Union boycott, without losing those customers who remain. In any event, respondents can hardly point to Kable's attempts to thwart the impact of their activities as justification for the legality of their activities.

■ In view of the fact that this Court has found reasonable cause to believe that Kable Printing Company is out of the rotogravure phase of its printing business and terminated such phase of its operations for legitimate economic reasons, there exists reasonable cause to believe that respondents' activities constitute a secondary boycott in violation of Section 8(b)(4)(i) and (ii)(B) of the National Labor Relations Act.

## III. PROPRIETY OF INJUNCTIVE RELIEF

As heretofore noted, a finding of reasonable cause to believe that respondents have violated Section 8(b)(4)(i) and (ii)(B) of the National Labor Relations Act is not dispositive of the entire matter. The Court must also be convinced that the issuance of injunctive relief is just and proper under the circumstances. In the instant case, the Court is persuaded that both the public interest and preservation of the status quo pending final adjudication by the National Labor Relations Board compel the issuance of injunctive relief.

■ The acknowledged purpose of Section 10(*l*) of the National Labor Re-

lations Act is preservation of the status quo pending final adjudication by the Board in order to protect the efficacy of the Board's final order. Schauffler v. Local 1291, International Longshoremen's Ass'n, 292 F.2d 182, 188 (3rd Cir., 1961). It would indeed be pointless if the Board were to finally determine that respondents' activities in fact violated the National Labor Relations Act and such activities were permanently enjoined if Kable in the meantime had been forced to shut down entirely because it could not economically remain in business. From the affidavits submitted herein, however, that grave possibility has been demonstrated. It is is undisputed that losses to Kable for the year 1974 as a result of the failure of outside engravers to supply the necessary cylinders to Kable have been estimated at more than $5,000,000. Furthermore, Kable is currently performing rotogravure printing work for only six customers where prior to May 10, 1974, there had been 20. Even with respect to its remaining customers, Kable has sustained serious financial losses due to the inability to fill the individual orders as they come due. Mr. John E. Sayles, vice president in charge of sales for Kable Printing Company, has attested to the fact that continuous loss of customers who as a matter of course in this industry place long-term contracts with a printing company will result in a permanent termination of all activities at the Kable plant. Moreover, if the Kable plant shut down permanently, 650 of the 3,000 people in the town of Mt. Morris, Illinois would be rendered jobless.

Nor would Local 91–P or Local 277 be harmed by the issuance of such an injunction. In view of the fact that this Court has ascertained the existence of reasonable cause to believe that Kable Printing Company has phased out the rotogravure portion of its business, Local 91–P would not return to that plant and has nothing to gain by virtue of its strike, and the concomitant refusal of respondents to allow their members to work on the Kable cylinders. On the other hand, should this Court refuse to issue an injunction and should the Board eventually determine that respondents herein have not violated the Act, Local 91–P might very well not have an employer with which to bargain or to which its members could return. In the meantime, Local 277 is doing the rotogravure work for Kable, and the Court fails to see how that fact places them at any disadvantage.

As concerns respondents' claim that what is in fact at issue here is a clause in the labor contract between Local 277 and S & M and Local 277 and Mueller, such that this Court should defer any decision herein to arbitration proceedings, the Court would point out that just such a claim was defeated in the case of Graphic Arts International Union (G. A. I. U.) Local # 277, et al and S & M Rotogravure Service, Inc., Case 30–CC–231. There having been a provision in the contract between S & M and Local 277 such that disputes bearing upon the struck work provision of the contract were not subject to arbitration, National Labor Relations Board Administrative Law Judge Alvin Lieberman concluded that deferral to arbitration was not warranted. In view of the fact that such provisions similarly exist in the labor contract between Local 277 and Mueller the Court finds Judge Lieberman's decision equally controlling in that situation.

Based upon the foregoing, now therefore, IT IS ORDERED that respondents, their officers, representatives, agents, servants, employees, and all members and persons acting in concert or participation with them, be and hereby are enjoined pending the final disposition of the matters involved herein by the National Labor Relations Board, from:

(a) Refusing to perform services for S & M Rotogravure Service, Inc. and Mueller Color Plate Company or any other person or employer upon products and/or processes which had been performed in the roto-processing department at Kable Printing Company prior to July 22, 1974.

(b) In any manner or by any means, including picketing, orders, directives,

instructions, requests, or appeals, however given, made or imparted, or by like or related acts or conduct, or by permitting any such to remain in existence or effect, engaging in, or inducing or encouraging individuals employed by S & M and Mueller or by any other person engaged in commerce or in an industry affecting commerce, to engage in a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials, or commodities or to perform any service, or in any manner or by any means, threatening, coercing, or restraining S & M and Mueller or any other person engaged in commerce or in an industry affecting commerce, where in either case an object thereof is forcing or requiring S & M or Mueller and other persons to cease using, selling, handling, transporting or otherwise dealing in the products of and to cease doing business with Kable Printing Company.