540 F.2d 853
 93 L.R.R.M. (BNA) 2257, 79 Lab.Cas. P 11,573
 George SQUILLACOTE, Regional Director of the Thirtieth
Region of the National Labor Relations Board for
and on behalf of the National Labor
Relations Board, Petitioner-Appellee,
v.
GRAPHIC ARTS INTERNATIONAL UNION, AFL-CIO and Graphic Arts
International Union, Local 277, Respondents-Appellants.
 No. 76-1381.
 United States Court of Appeals, Seventh Circuit.
 Argued June 18, 1976.
Decided June 30, 1976.[1]
 
 Martin Ganzglass, Washington, D. C., Richard D. Hicks, Milwaukee, Wis., for respondents-appellants.
 Elliott Moore, Deputy Assoc. Gen. Counsel, Joseph E. Mayer, Miriam B. Hartley, Attys., N. L. R. B., Washington, D. C., for petitioner-appellee.
 Before CUMMINGS, PELL and TONE, Circuit Judges.
 TONE, Circuit Judge.
 
 
 1
 This case is one of a series arising from a continuing labor dispute between Kable Printing Company and Graphic Arts International Union, AFL-CIO, Local 91-P. The local represented a unit of Kable's employees engaged in the production and processing of rotogravure cylinders. Several unfair labor practice proceedings and ancillary injunction actions arising from the dispute have been decided by this court and one is pending undecided at the time of the entry of this order. Squillacote v. Graphic Arts Int'l Union (GAIU) Local 277, 381 F.Supp. 551 (E.D.Wis.1974), rev'd, 513 F.2d 1017 (7th Cir. 1975) (entry of § 10(l ) injunction ordered); Squillacote v. Graphic Arts Int'l Union (GAIU) Local 277, 388 F.Supp. 258 (E.D.Wis.1975), aff'd, 519 F.2d 1405 (7th Cir. 1975) (§ 10(l ) injunction affirmed); Graphic Arts Int'l Union and Local 277 (Kable Printing Co.), 222 N.L.R.B. No. 57 (1976), vacated and remanded sub nom., Kable Printing Co. v. NLRB, No. 76-1038 (unpublished order dated March 25, 1976); Mount Morris Graphic Arts Int'l Union, Local 91-P (GAIU) (Blackhawk Engraving Co.), 219 N.L.R.B. No. 169 (1975), Graphic Arts Int'l Union (GAIU) Local 277 (S & M Rotogravure Service, Inc.), 219 N.L.R.B. No. 171 (1975), and Local 245, Graphic Arts Int'l Union (GAIU) (Graphicscans Corp.), 220 N.L.R.B. No. 75 (1975), pending review by this court, Nos. 75-1758, 75-1853, 75-1852, consolidated hearing held April 16, 1976.[2] We shall not attempt to recapitulate here the facts of the dispute or the procedural history that may be gleaned from earlier opinions and orders of the Board and the courts.
 
 
 2
 The case now before is a sequel to No. 76-1038 (S & M (I) ), in which we vacated the Board's order dismissing charges under § 8(b)(4)(i) and (ii)(B) of the Labor Management Relations Act, 29 U.S.C. § 158(b)(4)(i), (ii)(B). The consolidated complaint before the Board in that case, based on complaints filed by Kable in August and October 1974, had alleged that another local, Local 277 of Graphic Arts International Union, and the International Union had violated the above-mentioned sections of the Act by inducing and encouraging employees of S & M Rotogravure Service, Inc. and Mueller Colorplate Company to engage in a secondary boycott in furtherance of the strike against Kable by Local 91-P. It was alleged that the unions had induced employees of S & M and Mueller, who were neutrals to the labor dispute between Kable and Local 91-P, not to perform rotogravure-cylinder processing work ordered by Kable from S & M and Mueller after Kable had decided, for economic reasons, permanently to close down its own rotogravure-processing department. The unions' position was that the work Kable had placed with S & M and Mueller was "struck work" of the Kable photoengravers, i. e., work which would have been performed by those employees but for the strike, and that S & M and Mueller were therefore "allies" of Kable in Kable's dispute with Local 91-P, which made it lawful for the unions to put economic pressure on those companies. After hearing, the Administrative Law Judge issued a decision and order finding that the unions had violated the Act as alleged and ordering them to cease and desist. The Board reversed, two members of the panel ruling that the General Counsel had failed to prove that Kable permanently ceased its rotogravure-processing operations and that, at least in the absence of such proof, an ally relationship existed between Kable and its suppliers, S & M and Mueller, and one member dissenting urging the adoption of the ALJ's decision and order. The Board's decision on January 14, 1976 resulted in the vacating by the district court, Judge Warren, of a § 10(l ) injunction order which had been entered on January 7, 1975, based on the complaints in that case (Squillacote v. Graphic Arts Int'l Union (GAIU), Local 277, supra, 388 F.Supp. 258), which order had been affirmed by this court. 519 F.2d 1405 (1975). The International Union thereupon ordered Local 277 members to stop their work as employees of S & M and Mueller on Kable cylinders, and the work stopped.
 
 
 3
 We remanded S & M (I) for two reasons. The first was that the Board majority sustained the "struck-work" defense on the ground that "the General Counsel's evidence falls far short of clear and convincing proof as to the permanency of Kable's announced closing down of rotogravure preparatory operations," thus erroneously applying a more stringent standard of proof than the "preponderance of the testimony taken" standard prescribed by § 10(c) of the Act, 29 U.S.C. § 160(c). The second reason was that, although the Board's practice is to reject an ALJ's credibility findings only when they are contrary to the "clear preponderance" of the evidence, the Board ignored the ALJ's findings as to Kable's intent, which were based on the testimony of Kable officials, without making any finding of its own and without an explanation.
 
 
 4
 We are advised that the Board has accepted the remand in S & M (I) but has not yet decided the case. The General Counsel has moved to consolidate that case and the unfair labor proceedings on which the injunction in the case at bar was based. The union respondents have opposed consolidation. The Board has the consolidation issue under advisement.
 
 
 5
 In the Board proceeding which is the basis for the injunction under review, the General Counsel makes essentially the same allegations as those made in S & M (I). Again the targets of the alleged secondary boycott were S & M and Mueller. When the new unfair labor practice charges were filed, the Regional Director again applied to the District Court for a preliminary injunction, based upon the new proceedings before the Board, and the court issued a temporary restraining order and subsequently a preliminary injunction enjoining the refusal to perform work on jobs placed by Kable with S & M and Mueller.
 
 
 6
 The new unfair labor practice charges which are the predicate for the injunction under review are based upon events subsequent to the evidentiary hearing before the ALJ in S & M (I). These subsequent events which the Regional Director contends now establish, and will convince the Board, that Kable has permanently closed down its rotogravure-processing department may be summarized as follows:
 
 
 7
 Kable has sold virtually all of its remaining rotogravure-processing equipment, principally to Progressive Graphics Co. of Oregon, Illinois. This includes a laydown machine essential to cylinder production, which was sold for $76,100 by a contract providing for a sliding scale of increasing monthly payments commencing in April 1976. Kable had previously delivered its other laydown machine to Mueller, and, although a final price had not been determined at the time of the prior hearing, in January 1976 the companies agreed upon a price of $5500, which sum is to be deducted from current invoices owed Mueller by Kable. Kable retains only a few pieces of equipment which do not provide it with the capacity to produce any type of rotogravure cylinder.
 
 
 8
 Kable has not produced any cylinders with its own employees and equipment since January 20, 1975. It would require a minimum of approximately five months and a capital investment of approximately $300,000 for Kable to acquire and install and new equipment necessary to re-establish a rotogravure-processing operation.
 
 
 9
 Since January 1975 Kable has obtained all of its rotogravure cylinders from independent subcontractors. On October 31, 1975, Kable contracted with S & M for the production of from about 200 to 600 cylinders a year for a three-year period beginning August 1, 1975. Kable also entered into a five-year contract with Progressive on September 19, 1975, pursuant to which Progressive is to produce a minimum of 400 cylinders for Kable during the first year, and Kable agreed to make reasonable increases and production requirements for the four succeeding years covered by the agreement.
 
 
 10
 The Regional Director acknowledges that some ancillary cylinder-maintenance work is still being performed by Kable, which organized a Quality Assurance Department following its decision to cease producing cylinders. The new department assures overall product quality as well as the quality of cylinders received from outside suppliers and performs minor, in-house maintenance work on these cylinders. Kable also does some copper and chrome plating for Progressive. The other suppliers, including S & M and Mueller, do their own plating work. When a cylinder becomes worn or scratched while it is on the press for printing, it is necessary that de-chroming and re-chroming of the cylinder be done, which Kable does. Correction work also becomes necessary while the cylinders are on the presses, and Kable must do that. Kable also proofs and marks up for correction the cylinders produced by its suppliers. Kable, however, does not make the corrections but returns the cylinders to the suppliers for correction. All of this remaining work is performed by approximately seven Kable employees. The number of employees in Kable's rotogravure-processing department prior to the time it closed down that operation was many times the seven now performing the residual services.
 
 
 11
 To prove the foregoing facts before the District Court, the Regional Director submitted affidavits and documentary exhibits, including the contracts for the sale of equipment and the production contracts. Based upon this data and the prior findings in the related proceedings, the District Court found that there is reasonable cause to believe that Kable has terminated its rotogravure-processing operation and that the respondent unions' activities constitute a secondary boycott in violation of § 8(b)(4)(i) and (ii)(B) of the Act. The court further concluded that injunctive relief was "just and proper," noting that in Squillacote v. Graphic Arts Int'l Union, Local 277, supra, 388 F.Supp. at 263, et seq., it had determined that injunctive relief was just and proper, that the injunction was in the public interest, and that it preserved the status quo pending final adjudication by the Board. The court concluded that these same considerations were present in the instant case and that, "if anything, threat of irreparable injury has become only more apparent here." Accordingly, the court entered its injunction order. Following the filing of a notice of appeal by the unions, we denied a motion to stay the injunction pending disposition of the appeal but ordered the appeal expedited and set an expedited schedule for briefing and oral argument.
 
 
 12
 We established the principles which govern review of the injunction before us in an opinion by Judge Sprecher in an earlier chapter in this series of proceedings, Squillacote v. Graphic Arts Int'l Union, supra, 513 F.2d at 1021:
 
 
 13
 "On a section 10(l ) petition, the district court is not called upon to decide the merits of an 8(b)(4) charge. The Board does this. The district court guided by equitable principles determines instead whether the Board has reasonable cause to believe the defendant has violated section 8(b)(4) of the Act. If the court finds reasonable cause, it must grant whatever injunctive relief 'it deems just and proper.' "
 
 
 14
 Accordingly, the question for the District Court was whether the Board's representative for this purpose, the Regional Director, had "reasonable cause to believe (the unfair labor practice) charge is true." The unions' contention that the Regional Director must establish by "clear and convincing evidence" that reasonable cause exists to believe the charge is true is in error. On the contrary, "the Regional Director faces a relatively insubstantial burden of proof when he petitions a district court for temporary injunctive relief pursuant to § 10(l )." Hirsch v. Building and Construction Trades Council, 530 F.2d 298, 302, 91 L.R.R.M. 2438, 2441 (3d Cir. 1976). As we said in Madden v. Int'l Hod Carriers' Building and Common Laborers' Union, 277 F.2d 688, 692 (7th Cir. 1960), cert. denied, 364 U.S. 863, 81 S.Ct. 105, 5 L.Ed.2d 86 (1960):
 
 
 15
 "The evidence need not establish a violation. It is sufficient to sustain the District Court's finding and conclusion if there be any evidence which together with all the reasonable inferences that might be drawn therefrom supports a conclusion that there is reasonable cause to believe that a violation had occurred."
 
 
 16
 Accord, Wilson v. Milk Drivers and Dairy Employees Union, 491 F.2d 200, 206 (8th Cir. 1974). In the latter case the court quoted with approval the following statement in Kennedy v. Sheet Metal Workers International Association Local 108, 289 F.Supp. 65, 91 (C.D.Cal.1968):
 
 
 17
 "The statutory standard of 'reasonable cause' is satisfied if there is a showing of factual issues which must be resolved by the Board. Section 10(l ) commands the courts to disregard their traditional reluctance to issue preliminary injunctions when there is a substantial conflict in the evidence."
 
 
 18
 See also Seeler v. Trading Port, Inc., 517 F.2d 33, 36-37 (2d Cir. 1975), in which the court said that when there are "disputed issues of fact . . . the Regional Director should be given the benefit of the doubt . . .." And in Danielson v. Joint Board, 494 F.2d 1230, 1245 (2d Cir. 1974), on which the unions rely here, the court said:
 
 
 19
 "When 'reasonable cause to believe' turns on disputed issues of fact, the Regional Director may assume these in favor of the charge and the district court should sustain him if his choice is within the range of rationality. If differing inferences may fairly be drawn from the facts he has found, he may choose the one more favorable to the charging party, and this too should be upheld."
 
 
 20
 Also, the legal theory on which the Regional Director bases his belief need not have been finally and conclusively established. As the Third Circuit said in the Hirsch case, supra, 530 F.2d at 302, the Regional Director "need only demonstrate that he has reasonable cause to believe that the elements of an unfair labor practice are present and that the legal theory upon which he proceeds is 'substantial and not frivolous.' " Accord, Kennedy v. Los Angeles Typographical Union, 418 F.2d 6, 8 (9th Cir. 1969); Boire v. Int'l Brotherhood of Teamsters, 479 F.2d 778, 792 (5th Cir. 1973). Cf. Squillacote v. Graphic Arts Int'l Union, supra, 513 F.2d at 1021 n.4. In Danielson v. Joint Board, supra, 494 F.2d at 1245, the court stated:
 
 
 21
 "Even on an issue of law, the district court should be hospitable to the views of the General Counsel, however novel."
 
 
 22
 Applying these principles to the case at bar, we cannot say that it was an abuse of discretion for the District Court to issue a preliminary injunction. The legal theory of the Regional Director and the General Counsel in the case at bar is certainly "within the range of rationality," and may very well be sustained by the Board. Cf. Squillacote v. Graphic Arts Int'l Union, supra, 513 F.2d 1017; Squillacote v. Graphic Arts Int'l Union, supra, 388 F.2d 258, aff'd, 519 F.2d 1405.
 
 
 23
 Nor do we believe the District Court erred in finding on a factual level that the Regional Director had reasonable grounds to believe that a violation had occurred. It is possible that the Board on remand in S & M (I), applying the correct standard of proof and giving the ALJ's credibility findings their due, will conclude that even on the facts existing at the time of the hearing in that proceeding Kable had permanently terminated its rotogravure-processing business and the unions were therefore guilty of an unfair labor practice. In any event, occurrences since that hearing was held may well lead the Board to conclude that Kable has permanently terminated the portion of its business in issue, and as a result an unfair-labor-practice determination may follow.
 
 
 24
 In our view, the limited inquiry open to the courts in a section 10(l ) proceeding and the previous proceedings in connection with this dispute, which indicate a strong possibility, if not a likelihood, that the General Counsel's legal theory may be adopted by the Board, make it unnecessary to discuss in detail the application of the struck-work doctrine to the facts presented in this case. The District Court was, we believe, correct in finding that on the basis of the new developments, viewed against the background of the previous cases, "there is sufficient reasonable cause to believe that Kable Printing Company has terminated the rotogravure phase of its printing business," and, therefore, that there is reasonable cause to believe that the unions committed the unfair labor practices charged by the General Counsel in the complaints before the Board.
 
 
 25
 Given the foregoing, the injunctive relief granted by the District Court was "just and proper." Cf. Squillacote v. Graphic Arts Int'l Union, supra, 513 F.2d at 1022, 1023. No alternative kind of relief would have given adequate recognition to the reasonable-cause-to-believe standard of section 10(l ).
 
 
 26
 We recognize that during the pendency of the temporary injunction the unions and their members are prohibited from engaging in a boycott which they contend is lawful, and that if their position is ultimately sustained by the Board their proper exercise of economic pressure to gain their ends will have been delayed. This result must be balanced against the economic losses and the injury to the public that will result if what turns out to be an unlawful secondary boycott is allowed to continue in the face of the Regional Director's reasonable cause to believe that the boycott is illegal. Under these circumstances, we cannot say that the District Court abused its discretion in determining that the issuance of a preliminary injunction pending resolution of the issue by the Board was just and proper.
 
 
 27
 The unions also complain that the temporary restraining order which preceded the preliminary injunction extended for a period much longer than the five days authorized by section 10(l ). While, literally read, the five-day limitation applies to temporary restraining orders issued without notice, we think that the limitation, like that in Rule 65(b), Fed.R.Civ.P., applies also to temporary restraining orders granted after notice and hearing. Granny Goose Foods, Inc. v. Brotherhood of Teamsters, 415 U.S. 423, 440-445, 94 S.Ct. 1113, 39 L.Ed.2d 435 (1974). The District Court therefore erred in allowing the temporary restraining order to run beyond the five-day period. The remedy is not, however, to reverse the preliminary injunction ultimately issued. The unions could have sought relief either by an application for an extraordinary writ or by an appeal. The District Court in future cases is directed to observe the five-day limit of section 10(l ).
 
 
 28
 The unions also contend that they were deprived of procedural due process by the refusal of the District Court to hold an evidentiary hearing. We do not believe that it was necessary to hold an evidentiary hearing in this case, having in mind the prior proceedings in which many of the facts were established and the rule that the court's function is limited to a determination of whether contested factual issues could ultimately be resolved by the Board in favor of the General Counsel. Such facts as were not established in earlier proceedings were made to appear by affidavits and documents filed in support of the Regional Director's motion. Eisenberg v. Hartz Mountain Corp., 519 F.2d 138, 143 n.5 (3d Cir. 1975); Kennedy v. Teamsters Local 542, 443 F.2d 627, 630 (9th Cir. 1971); cf. San Francisco-Oakland Newspaper Guild v. Kennedy, 412 F.2d 541, 546 (9th Cir. 1969); Federal Trade Commission v. Rhodes Pharmacal Co., 191 F.2d 744, 746-748 (7th Cir. 1951).
 
 
 29
 The unions point to the decision of Judge Flaum in Zipp v. Graphic Arts Int'l Union, Local 91-P, No. 76-C-2009 (N.D.Ill. March 12, 1976), another section 10(l ) proceeding arising from a similar factual situation at the plant of another company with whom Kable had placed rotogravure-processing work. Judge Flaum held an evidentiary hearing and then denied the preliminary injunction. The unions imply that if an evidentiary hearing had been held in the case at bar, an injunction would have been denied. We note that at the time Judge Flaum rendered his decision, the latest word on the underlying legal question was the Board's decision in S & M (I), which we later vacated and remanded in No. 76-1038. Whether Judge Flaum would have reached the same result after our decision we cannot say, but in any event we are not reviewing the correctness of his ruling. We believe, for the reasons stated above, that an evidentiary hearing was unnecessary and that Judge Warren did not abuse his discretion.
 
 
 30
 One final argument of the unions deserves mention. They argue with considerable force that if they are to be preliminarily enjoined from exerting economic pressure which they consider appropriate to advance the interests of themselves and their members, at the very least the Board ought to be required to dispose of the underlying unfair labor practice proceeding with dispatch. They complain that the Board has delayed the proceeding. We agree that the unions are entitled to have the Board proceed promptly and to give the proceeding the priority it deserves in view of the existence of the preliminary injunction. We are not persuaded, however, that the Board has as yet failed to discharge its obligation in this regard. We assume the Board will promptly determine whether the proceedings arising from a single labor dispute should be consolidated before a single Administrative Law Judge and will act with all reasonable speed to bring this unhappily protracted series of proceedings to a conclusion. We are unwilling to assume that the Board will not perform its duty and we therefore decline to adopt the six-month limitation on preliminary injunctions in section 10(l ) cases which the Third Circuit established in Eisenberg v. Hartz Mountain Corp., supra, 519 F.2d at 144. The need for such a rule here has not been demonstrated by the unions.
 
 
 31
 We have considered the other contentions made by the unions and find them to be without merit. The order of the District Court is affirmed.
 
 
 32
 AFFIRMED.
 
 
 
 [1]
 This appeal was originally decided by unreported order on June 30, 1976. See Circuit Rule 35 (formerly Circuit Rule 28). The court has subsequently decided to issue the decision as an opinion
 
 
 [2]
 After this appeal was decided, but before its publication, these cases were affirmed sub nom., Blackhawk Engraving Co. v. NLRB, --- F.2d ---- (7th Cir. 1976), and Kable Printing Co. v. NLRB, --- F.2d ---- (7th Cir. 1976)