Donald J. CRAWFORD, Regional Director, Region 13 of the National Labor Relations Board, for and on Behalf of the NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

ENVIRONMENTAL WASTE DISPOSAL, INC., Respondent.

No. 82 C 1776.

United States District Court, N.D. Illinois, E.D.

Feb. 28, 1983.

On Motion for Stay Pending Appeal March 17, 1983.

---

Ramon Martinez, Jr., N.L.R.B., Chicago, Ill., for petitioner.

Irving M. Geslewitz, Adams, Fox, Marcus, Adelstein & Gerding, Chicago, Ill., for respondent.

MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Petitioner, the National Labor Relations Board ("NLRB"), by its general counsel, seeks interim injunctive relief under § 10(j) of the National Labor Relations Act ("NLRA").[1] Petitioner requests that this Court issue an injunction reinstating 13 of respondent's employees who were discriminatorily discharged in violation of sections 8(a)(3) and 8(a)(1) of the NLRA.[2] Petitioner also asks that respondent Environmental Waste Disposal, Inc. be enjoined from committing further unfair labor practices against its employees, and be ordered to remove the record of warning notices issued to its employees.

Respondent is a scavenger service owned and operated by Charles and Frances Loman and their two sons, Richard and Robert. In April, 1981, respondent's employees began discussing the possibility of unionizing respondent's facility. On July 9, 1981, they held their first union meeting and signed enough union authorization cards to require the NLRB to hold a representational election on respondent's work place.

On July 13, 1981, in response to the discharges of two union supporters on July 10 and the earlier discharge of another supporter, the Labor Board issued the first of numerous unfair labor practices against the respondent. The Labor Board claims that in the months that followed, and at least until October 30, 1981, respondent repeatedly violated sections 8(a)(1) and (3) of the NLRA by interfering with and coercing employees in the exercise of their organizational rights, and by discriminatorily discharging 13 employees due to their organizational efforts.

On March 22, 1982 the Board consolidated all of the charges issued against respondent for hearing. The following day, the Board petitioned this Court for interim injunctive relief under § 10(j), pending resolution of the charges. The consolidated hearing began on April 19, 1982, and closed on June 18, 1982. The Labor Board subsequently submitted the transcript of that hearing to substantiate its petition for injunction.

### The Standards for Issuing a 10(j) Injunction

Section 10(j) of the NLRA empowers the Board to petition the District Court for temporary injunctive relief once unfair labor practices have been issued against a party. *Squillacote v. Local 248, Meat & Allied Food Workers,* 534 F.2d 735 (7th Cir.1976). This section was designed to permit the courts upon request from the Board, to preserve the status quo and to prevent frustration of the policies behind the NLRA during the considerable time gap between the filing of charges by the Board and issuance of its final decision. *Muniz v. Hoffman* 422 U.S. 454, 466, 95 S.Ct. 2178, 2185, 45 L.Ed.2d 319 (1975).

The district court must follow a two step process in determining whether section 10(j) injunctive relief should issue. First, the Court must determine whether the Board has "reasonable cause to believe" that unfair labor practices have been committed. If reasonable cause is found, the Court must then determine whether the relief requested is "just and proper." *Squillacote v. Graphic Arts International Union,* 540 F.2d 853 (7th Cir.1976).

### Reasonable Cause

When making a reasonable cause determination, the district court is not per-

---

1. 29 U.S.C. 160(j). This provision gives the Board the "power, upon issuance of a complaint ... charging ... an unfair labor practice, to petition any United States District Court ... for appropriate temporary relief or restraining order ... the Court shall have jurisdiction to grant to the Board such ... relief or restraining order as it deems just and proper."

2. Section 8(a)(3) makes it an unfair labor practice for an employer to discriminate against its employees with respect to tenure of employment for the purpose of discouraging membership in a labor organization. 29 U.S.C. 158(a)(3) 1976. Section 8(a)(1) makes it an unfair practice for an employer to interfere with, restrain, or coerce employees in the exercise of their organizational rights. 29 U.S.C. 158(a)(1).

mitted to decide the merits of the unfair labor practices underlying the § 10(j) proceeding. *Squillacote v. Graphic Arts International Union Local 277,* 513 F.2d 1017 (7th Cir.1975). The only function of the Court is to determine whether the Board has reasonable cause to believe that the elements of an unfair labor practice are present, and that the legal theory upon which the Board proceeds is substantial and not frivolous. *Squillacote v. Graphic Arts International Union,* 540 F.2d 853, 858–59 (7th Cir.1976). Further, the Court must resolve all factual disputes in favor of the petitioning Board. The Board is held to a "relatively insubstantial" burden of proof. If the evidence viewed in the light most favorable to the Board could reasonably support a finding that a violation of the Act has occurred, the Board met its burden and the district court may grant appropriate relief. *Id.* at 858.

A review of the 4,500 pages of transcript and exhibits in this case reveals that the Board has more than met this insubstantial burden. The hearing transcript repeatedly displays testimony which, when viewed in the light most favorable to the Board, gives rise to the reasonable belief that respondent committed the alleged unfair labor practices.

A complete reiteration of the facts and case law pertaining to each of the many unfair labor practices (ULPs) surrounding the discharges of the 13 alleged discriminatees, and respondent's interference and coercion would be unduly burdensome for present purposes. Instead, the elements for establishing a ULP violation and a brief chronology of the discharges and relevant acts of interference and coercion are set forth below.

### The Violations

 In order to establish an 8(a)(3) charge, the Board must demonstrate that the respondent discharged its employees out of anti-union animus. Thus, the Board must set forth reasonable cause to believe that respondent knew of the employees' union activities, and discharged them in order to quell those activities. *Zipp v. Shenanigans,* 106 LRRM 2989 (C.D.Ill.1981). Because motivation is rarely open to direct proof, it is frequently proven upon consideration of all evidence, and the Board is free to rely on circumstantial as well as direct evidence. *Justak Bros. v. NLRB,* 664 F.2d 1074, 1077 (7th Cir.1978). The timing of the discharges, the employer's conduct and statements are thus significant factors in determining motivation. *Id.*

A review of the chronological facts in this case, as established by substantial evidence in the transcript, demonstrates such a strong nexus between union activity and the timing of the discharges that it is clear the Board has met its insubstantial burden. These facts are briefly summarized below:

1. On April 5, 1981 Leonard Evans protested to Richard Loman and foreman Daryl MacArthur that he was not being paid for all the hours he worked. Evans told Loman that respondent should "get a union" so that he could be paid properly. Three days later, when Evans went to the garage to find out why he had not been called to work, Loman told him that he had not been called because he was fired due to the fact that he was a troublemaker.

2. On July 9, the first union meeting was held at Kurt Bushno's home. Michael Roach attended, and along with 12 or 13 others signed a union authorization card. Much of the meeting took place on the front porch. Employees testified that during the meeting respondent's foreman, Charlie Sims,[3] drove by and surveyed the crowd on the porch. Employees also testified that Sims told them he "had a snitch." On the evening of July 10, Robert Loman visited both Bushno and Roach at their homes and discharged them. Loman told Roach in response to his inquiries about why he had been fired, "you know why you're fired."

---

**3.** Respondent argues that Sims was not a foreman and thus not an agent. There are, however, ample facts on the record to support a finding that he was an agent. *See* 29 U.S.C. § 152(11); *Graves Trucking, Inc. v. N.L.R.B.,* 692 F.2d 470 (7th Cir.1982).

3. On July 13, Al Lidgren, the union's business agent, contacted respondent to tell him the union had been authorized to bargain on behalf of the employees. On that same day union supporter Gary Brown was discharged. Respondent claimed Brown was discharged due to his involvement in a minor accident which had taken place over a month before the discharge.

4. On July 15, Respondent received official notification that an NLRB election would be held at respondent's premises. On July 17, David Phillips, union supporter, was discharged.

5. On July 20, respondent attempted to and did effect the withdrawal of employee authorization cards. Bobby Jones, Floyd Jones, Melvin Stevens, and R. Boyd signed withdrawals. Fowler and Broughton signed withdrawals of their union authorization cards of 1979.[4] Leonard Griffin refused to sign a withdrawal.

6. Between July 20 and July 27, Griffin refused to withdraw his card three times. On July 27, Griffin was discharged.

7. On August 2, union supporter Donald Williams was discharged.

8. On August 3, at the Board's representational hearing, Jones and Stevens testified falsely to their wage rate at respondent's instruction.

9. On August 5, respondent again interfered with organizational rights by making a second attempt to have employees withdraw their cards, the first set of withdrawals having failed.

10. On August 24, a second union meeting was held at Dan Roach's house. On August 25, Stanley Jackson was told by respondent to sign a withdrawal or lose his job.

11. On September 8, two election eve dinners were held. Respondent invited all the employees to see "who was for the company." At the meeting, respondent threatened that employees would lose their jobs if the union won the election and promised benefits if it lost. Respondent also engaged in a debate with Dan Roach over the merits of unionization.

12. On September 9, the election was held. Respondent refused to let a number of employees vote until ordered to do so by the Board.

13. On September 12, Kirk Hoskins, a union supporter, was discharged.

14. On September 15, Stanley Jackson was discharged.

15. On September 16, Robert Boyd was discharged.

16. On October 6, Melvin Stevens submitted an affidavit in the pending unfair labor practice proceeding. He was discharged on October 7.

17. On October 12, Floyd Jones was laid off.

18. On October 30, Dan Roach was discharged.

■ In all, the evidence submitted indicates from April 1981 until October 31, 1981, thirteen union supporters were discharged by respondent, respondent attempted to effect the withdrawal of union authorization cards at least 3 times, respondent threatened employees with discharge right before the election, and attempted to prevent them from voting. Under the standards discussed above, the Court finds that these actions are sufficient to give the Board reasonable cause to believe that the respondent was acting from anti-union animus and attempting to interfere with the organization of the union in violation of sections 8(a)(1) and 8(a)(3) of the Act.

### Just and Proper Relief

■ Once the Court determines that the Labor Board has met its insubstantial burden of showing reasonable cause, the Court must determine whether the relief requested is "just and proper." *Squillacote v. Local 248, Meat & Allied Food Workers,* 534 F.2d 735, 743–44 (7th Cir.1976). Three factors must be considered when determining

---

4. A union campaign had failed in 1979, resulting in the discharges of 3 employees. The matter had been resolved through a settlement agreement.

the appropriateness of section 10(j) relief: (1) traditional equitable considerations such as the need to preserve or restore the status quo; (2) the need to prevent frustration of the basic remedial purposes of the Act; and (3) the degree to which the public interest is affected by a continuing violation. *Squillacote v. Meat & Allied Workers, Local 248*, 534 F.2d 735, 744. (7th Cir.1976).

After reviewing the arguments of both parties, the Court has concluded that, except with respect to certain employees discussed below, reinstatement is the most appropriate interim relief. Reinstatement in this case is necessary to preserve the *status quo ante*, to preserve the base of union support present among the employees at respondent's facility prior to the discriminatory discharges and other unfair labor practices, and to promote the important public policies embodied in the NLRA.

 The Court finds that reinstatement is not just and proper with respect to the following employees for the reasons stated:

(1) *Michael Roach.* Mr. Roach was reinstated by respondent after he was discharged, and his employment has since been terminated. No unfair labor practice charge has been filed with respect to that termination.

(2) *Floyd Jones.* Mr. Jones has already been reinstated by respondent.

(3) *Melvin Stevens.* Mr. Stevens has been convicted of a crime and is presently serving a prison sentence. Respondent therefore will not be required to offer him reinstatement.

(4) *Kirk Hoskins.* Due to the very brief and apparently temporary work relationship of Mr. Hoskins with respondent (he appears to have worked only on a part-time temporary basis for approximately five weekends, during which time he was collecting unemployment insurance), respondent will not be required to offer him reinstatement.

### ORDER OF PRELIMINARY INJUNCTION

Pursuant to the authority granted this Court under 29 U.S.C. § 160(j), after thoroughly reviewing the transcript of the proceedings on this matter before the National Labor Relations Board ("NLRB") and the written memoranda and oral presentations of the parties to this Court, and based on the findings of the Court as set forth above, the Court hereby orders that, pending final disposition of this matter before the NLRB, respondent Environmental Waste Disposal, Inc. its officers, representatives, agents, attorneys, and all persons acting in concert with respondent, as follows:

Respondent shall: (1) offer reinstatement to the following employees to their former positions or to substantially equivalent positions:

Leonard Evans

Kurt Bushno

Gary Brown

David Phillips

Robert Boyd

Stanley Jackson

Daniel Roach

Leonard Griffin

Donald Williams

(2) With respect to former full-time employees, respondent is ordered to offer reinstatement to full-time employment in the same or substantially similar positions that such employees formerly held. With respect to former part-time employees, if the former positions of these employees are not available at the time of reinstatement, respondent shall offer to such employees the substantial equivalent of their former positions in terms of the number of hours worked and rate of pay.

(3) Respondent shall be permitted to reinstate the employees listed in paragraph (1) of this order at the rate of three employees per week each week until all have been reinstated, to allow for an orderly transition of employees and a minimum disruption to respondent's provision of services to its customers.

(4) Respondent shall remove all warning slips from the files of all thirteen employees involved in this proceeding for any alleged infractions of rules dating from June, 1981

until the time of the discharge or layoff of each employee which is the subject of the charges consolidated in this case.

### Cease and Desist Order

Respondent is restrained and enjoined from further coercing, interrogating, restraining or discriminating against its employees or in any way committing unfair labor practices in violation of the National Labor Relations Act.

### On Motion For Stay Pending Appeal

Respondent has moved for a stay pending appeal of the Court's order of injunction issued January 11, 1983, as modified on March 1, 1983. For the reasons stated below, Respondent's motion for a stay is denied.

In reviewing orders of injunction issued under § 10(j), 29 U.S.C. § 160(j), the conclusion of the district court will be sustained if there is any evidence, together with all reasonable inferences which can be drawn in favor of the petitioner, that there is reasonable cause to believe that an unfair labor practice has been committed. *Squillacote v. Graphic Arts International Union,* 540 F.2d 853, 858 (7th Cir.1976). Under this standard of review, and in light of the strong evidence presented in the record of many serious violations of the National Labor Relations Act by respondent, respondent has not demonstrated a likelihood of success on appeal which would warrant granting a stay of the injunction.

Moreover, the decision recently issued by the Administrative Law Judge ("ALJ") who heard the entire case against the respondent further demonstrates that respondent is not likely to succeed on appeal. In her extensive decision and recommended order, which contains detailed findings of fact and conclusions of law, the ALJ found that respondent committed numerous serious violations of the Act against many employees. She recommended that the Board require respondent to offer reinstatement to six employees, to provide other relief to three employees, to remove warning slips from the files of three employees, to recognize the Union as the exclusive representative of the employees, to post a notice at respon-

dent's place of business concerning the order, and to cease and desist from numerous specified unfair labor practices. This decision confirms the court's conclusion that respondent is not likely to succeed on appeal.

Further, the Court finds that the respondent will not suffer irreparable harm if the injunction, as modified herein, is not stayed. The Court has considered at great length all the arguments urged by respondent, and has specifically tailored the order of injunction to cause the least amount of disruption to respondent's business without defeating the intended effect of the injunction. To permit further delay before requiring compliance with the Court's order would thwart the intended purpose and policy interests of § 10(j), which is to provide speedy, interim relief for the kind of serious infractions of the NLRA presented in this case.

To avoid conflict with the Administrative Law Judge's determination, the Court will modify and limit its order of injunction, issued January 11, 1983 and modified March 1, 1983, to require the respondent to offer reinstatement to the six employees recommended for reinstatement by the ALJ, all of which were included in the Court's prior order. In addition, to further accommodate the respondent and cause minimal disruption to respondent's business, the Court will grant respondent's request that reinstatement not commence until March 28, 1983.

Accordingly, the Court's order of injunction issued January 11, 1983, as modified March 1, 1983, is hereby modified as follows:

1. Respondent shall offer reinstatement to the following employees to their former positions or to substantially equivalent positions:

Kurt Bushno

David Phillips

Leonard Griffin

Donald Williams

Stanley Jackson

Daniel Roach

2. Reinstatement shall proceed at a rate of two employees per week until all employ-

ees listed in Paragraph (1) above who accept reinstatement offers have been reinstated, provided that reinstatement need not commence until March 28, 1983.

That portion of the Court's order of March 1, 1983 (numbered paragraphs (1)–(4)) which modified the order of injunction issued January 11, 1983 is hereby vacated.